IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES H. WILLIAMS,<br>              Plaintiff | : <br> : <br> :   No. 1:CV-01-0280 <br> : <br> :   (Judge Kane) <br> : <br> : <br> : |
| v. | |
| MARTIN L. DRAGOVICH, JAMES J.<br>McGRADY and RICHARD L. SPAIDE,<br>              Defendants | |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS

### STATEMENT OF THE CASE

This is a *pro se* inmate's civil rights action brought pursuant to 42 U.S.C. §1983. James H. Williams ("Plaintiff") is an inmate currently housed at the State Correctional Institution ("SCI") Greene. The allegations in Plaintiff's complaint arose during the time Plaintiff was housed at SCI Mahanoy. Plaintiff's complaint alleges that Martin Dragovich, James McGrady and Richard Spaide ("Defendants"), conspired against him in violation of his Eighth Amendment rights. Plaintiff requests compensatory and punitive damages, as well as court costs and filing fees. Plaintiff also requests that the Court discipline Defendants for their action and/or inaction and direct Defendants to remove a misconduct from his file.

Defendants filed a Motion to Dismiss on September 21, 2001 and a brief in

support of that Motion on October 3, 2001. By Order dated January 4, 2002, the Court directed Plaintiff to file a brief in opposition to the motion to dismiss within twenty (20) days of the order. Defendants were served with Plaintiff's brief in opposition to the motion to dismiss on January 22, 2002. Defendants file this Reply in response to Plaintiff's brief in opposition.

### STATEMENT OF MATERIAL FACTS

The facts have been set forth in full in Defendants' brief in support of the motion to dismiss.

### QUESTION PRESENTED

**WHETHER THE "MAILBOX RULE" APPLIES IN THIS CASE?**

### ARGUMENT

**THE "MAILBOX RULE" SHOULD NOT BE APPLIED IN THIS CASE.**

Plaintiff filed this action on February 13, 2001, as indicated at item number one (1) of this Court's docketing sheet. Claims brought in Pennsylvania pursuant to 42 U.S.C. §1983 are subject to a two year limitations period. Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir. 1985), cert. denied, 474 U.S. 950 (1985). In order for any of Plaintiff's claims in this case to be within the statute of limitations, the

2

incidents that give rise to Plaintiff's claims must have occurred between February 13, 1999 and February 13, 2001, the two years previous to the date on which the complaint was filed. Any event occurring before February 13, 1999, of which Plaintiff was or should have been aware, should be barred by the statute of limitations.

According to Plaintiff, the events which form the basis for his complaint occurred on or about December 7, 1998, through on or about February 8, 1999. Because all of these events occurred before February 13, 1999, they are outside of the two year statute of limitations allowed by law and should be dismissed.

In his brief in opposition to Defendants' motion to dismiss, Plaintiff admits that he was aware of the two year statute of limitations and that February 8, 2001 was the last date on which he could file a complaint concerning the events raised in the Complaint. (Plaintiff's Brief in Opposition at pg. 4 and 5). However, he appears to blame his failure to file a complaint within the two (2) year statute of limitations on a variety of events.[1]

First, Plaintiff states that there was a period of time that he was transferred to SCI Frackville from SCI Greene in November 2000, and that his personal belongings,

---

[1] Defendants note that none of the facts alleged by Plaintiff in his brief in opposition or in the documents Plaintiff has attached to his brief were included in his Complaint filed on February 13, 2001.

3

including his legal papers, were not sent to him at SCI Frackville. (Plaintiff's Brief at pg. 4-5). He also alleges that his property was not returned to him until the end of December 2000. (Plaintiff's brief at pg. 5). Plaintiff then alleges that he was then again transferred to SCI Green from January 17, 2001 through January 21, 2001. However, he does not allege that he was without his personal or legal property during this transfer. (Plaintiff's Brief at pg. 5). While Plaintiff alleges that he was transferred during these time frames he does not explain how or why these temporary transfers prohibited him from filing a complaint addressing the alleged events within the two year statute of limitations period. Plaintiff certainly had ample time between February 8, 1999 and November 2000 to file a compliant.

Furthermore, Plaintiff appears to raise the "mailbox rule" in his brief. The "mailbox rule", developed by the United States Supreme Court in Houston v. Lack, 487 U.S. 266 (1988), permits *pro se* prisoner's habeas corpus petitions to be deemed filed for the purposes of Federal Rule of Civil Procedure 4(a)(1) when the prisoner delivers it to "prison authorities". Id. at 275-77. For the reasons that follow, the "mailbox rule" should not be extended to apply to civil rights complaints filed pursuant to 42 U.S.C. §1983, such as the complaint filed by Plaintiff.

Plaintiff alleges that on February 2, 2001 he attempted to file his complaint, but that it was returned by the mailroom because he did not use the appropriate certified

4

mail form. He also alleges that he was not aware of any new policy concerning certified mail. Plaintiff goes on to allege that after receiving the new forms he returned the complaint to the mailroom on February 5, 2001. Again it was returned because he did not follow proper procedure. Plaintiff's complaint was then not sent out until February 9, 2001 and it was not received by the Court until February 13, 2001. (Plaintiff's Brief at pg. 5). Because of these alleged events, Plaintiff argues that his Complaint should be considered filed within the two (2) year statute of limitations. However, the Complaint was not filed within the statute of limitations and should be dismissed.

The Federal Rules of Civil Procedure to not allow for the filing of the Complaint beyond February 8, 2001. Federal Rule of Civil Procedure 3 states as follows: "A civil action is commenced by filing a complaint with the court." Federal Rule of Civil Procedure 5(e) states that, "[t]he filing of papers with the court as required by these rules shall be made by filing them with the clerk of the court." If these rules are applied, then Plaintiff did not commence his suit until February 13, 2001, when his complaint was received by the Clerk of this Court. The strict operation of the plain language of the Rules of Federal Procedure imposed a duty on Plaintiff to have filed his complaint with the clerk on or before February 8, 2001, in order for the complaint to have been timely filed. Because the Clerk of Court did not

5

receive the complaint until February 13, 2002, the complaint was filed outside of the statute of limitations and should be dismissed.

Defendants do recognize that the Supreme Court did make an exception to the language of the Federal Rules of Civil Procedure when creating the "mailbox rule" for *pro se* prisoners in <u>Houston</u>, 487 at 266. However, this exception should not be applied to civil rights cases such as the one filed by Plaintiff. In <u>Jackson v. Nicoletti</u>, 875 F.Supp.1107 (E.D.Pa. 1994), the Court declined to create a "mailbox rule" for *pro se* prisoner complaints of the kind filed by Plaintiff. The Court listed a variety of reasons that counsel against creating such a rule.

First, the Court agreed with the dissenters in <u>Houston</u> that the "mailbox rule" would alter the unambiguous language of the Federal Rules without an underlying constitutional violation. <u>Jackson</u>, 875 F.Supp. at 1112 citing <u>Houston</u>, 487 U.S. at 275-79.

Second, the Court concluded that a broad application of a "mailbox rule" would create an excessive administrative burden on the district courts. Such a rule would create as a collateral issue in any close case where the date on which a prisoner handed over his complaint to prison administrators was at issue. Such an exception would cause the need for extended motion practice in order for the litigant to prove that the complaint had been given to prison authorities before the statute of

6

limitations had run. Jackson, 875 F. Supp. at 1112-13.

Next, the Jackson Court noted that the "mailbox rule" becomes less persuasive in cases where there is a two year statute of limitations. It noted that the holding in Houston was a natural response to short period of time in which a litigant must assert or lose rights, such as the thirty (30) day limitation at issue in that case. In the case of a complaint filed pursuant to 42 U.S.C. §1983, the litigant will only lose the claim afer two years have expired. If the *pro se* prisoner fails to mail his complaint to the clerk of the court until the last moment, then the fault for delay rests in large part upon the prisoner. Jackson, 874 F.Supp. at 1113.

Fourth, the Court concluded that policies of finality and repose counsel strict application of statutes of limitations. If the "mailbox rule" were extended to these kinds of cases, an uncertainty would be created for defendants, for whom finality would depend in part upon whether a plaintiff had been incarcerated and whether that incarcerated plaintiff had an attorney or not. Id. at 1113.

Fifth, the Court stated that extension of the "mailbox rule" to these cases effectively exempts *pro se* prisoners from all of the deadlines of the Federal Rules of Civil Procedure, as well as adding elasticity to the statute of limitations unique to them. Such a rule may have the perverse result of introducing a disincentive for prisoners seeking or accepting the appointment of counsel, because represented

7

prisoners would not enjoy these wholesale exemptions. Id. at 1114.

Based upon these arguments and conclusions as set forth by the Court in Jackson, this Court should also decline to extend the "mailbox rule" in this case. Plaintiff had ample time to filed his complaint in this case before the statute of limitations had run. Due to his own delay he missed the filing deadline and he should not now be rewarded for his procrastination.

## CONCLUSION

WHEREFORE, for the foregoing reasons and those submitted in the Brief in Support of the Motion to Dismiss, Defendants' Motion to Dismiss should be granted in its entirety.

                                                                   Respectfully submitted,
                                                                   D. MICHAEL FISHER
                                                                   Attorney General

By: _____
      LINDA S. LLOYD
      Deputy Attorney General
      I.D. #66720

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Litigation Section**
**Harrisburg, PA 17120**
**(717) 705-7327**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**COUNSEL FOR DEFENDANTS**

**Dated: February 5, 2002**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES H. WILLIAMS, :
          Plaintiff :
: No. 1:CV-01-0280
v. :
:
MARTIN L. DRAGOVICH, JAMES J. :
McGRADY and RICHARD L. SPAIDE, :
          Defendants :

## CERTIFICATE OF SERVICE

I, Linda S. Lloyd, Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on February 5, 2002, I served a true and correct copy of the foregoing Defendants' Reply to Plaintiff's Brief in Opposition to the Motion to Dismiss, by causing it to be deposited in the United States Mail, first-class postage prepaid to the following:

    James H. Williams, AY-8692
    SCI Greene
    175 Progress Drive
    Waynesburg, PA  15370

_Linda S. Lloyd_
LINDA S. LLOYD
Deputy Attorney General