

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES H. WILLIAMS, | : | |
| Plaintiff | : | CIVIL NO. 1:CV-01-0280 |
| v. | : | (Judge Kane) |
| MARTIN L. DRAGOVICH, ET AL., | : | |
| Defendants | : | |

FILED
HARRISBURG

OCT 1 0 2002

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

### **MEMORANDUM AND ORDER**

Before this Court is Defendants' motion to dismiss the complaint. (Doc. No. 13). This motion has been fully briefed and is ripe for consideration. For the reasons discussed below, the motion will be granted in part and denied in part.

**I.   Background**

Plaintiff, an inmate presently confined in the Greene State Correctional Institution, Waynesburg, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983, in which he complains of events which occurred while he was confined at the State Correctional Institution at Mahanoy, Pennsylvania, (SCI-Mahanoy). The Plaintiff proceeds pro se. The named Defendants in this action are Superintendent Martin Dragovich and Unit Managers James McGrady and Richard Spaide.

1

Plaintiff states that upon his arrival at SCI-Mahanoy, he "constantly received official oppression" from Spaide. He claims that while he was housed on I-Bock, Mr. Spaide deliberately exposed him to environmental tobacco smoke by placing him with a cell mate who smoked three packs per day, in violation of SCI-Mahanoy's internal policy against placing a non-smoker with a smoker. This put Plaintiff's health at risk "for over 21 days or more," while all along, another cell was available. Williams filed a grievance on September 23, 1998 concerning this, but did not receive a positive response. (Doc. No. 1, Complaint).

Plaintiff states that he filed informal complaints by request-slip addressed to Deputy Novotney on Nov 30, 1998 and Dec 3, 1998, to no avail. Plaintiff contends that after he contacted Deputy Novotney, Spaide became more hostile towards him, stating that "nothing going to change this my block not his." On December 4, 1998, Plaintiff replied to this mistreatment by filing a threatening request slip. As a result, on December 7, 1998, Plaintiff received a misconduct for threatening another person and sixty days disciplinary custody as a sanction. Id.

On January 21, 1999, Plaintiff claims that during his Program Review Committee (PRC) review, Defendant Dragovich "signed documents stating that there's no reason why Williams can not return to his former housing unit" after his sixty days of disciplinary custody. As a result, Plaintiff was returned to Spaide's I-Block after serving his disciplinary custody time.

2

On February 8, 1999, as Plaintiff was going to the yard, he claims that Spaide stopped inside the doorway as Plaintiff passed, and elbowed him. He states that he defended himself against this attack. Williams then received a misconduct charging him with assaulting Spaide, who in turn filed criminal charges against Williams. Id.

On February 13, 2001, Plaintiff filed the instant action in which he claims that Defendant Dragovich was deliberately indifferent to his personal safety when "in his supervisory capacity he failed to prevent, separate and discipline other staff who knew of the incident and mishandling the investigation when the threats occurred." Id.

Plaintiff claims that Defendant McGrady was aware of the Dec. 23, 1998 PRC report, the continued threats against and from Spaide, and the Jan 21, 1999 PRC report, and that McGrady authorized Plaintiff's return to I-Block with Spaide, thereby "deliberately placed [Plaintiff] into an hostile environment and situation." McGrady allegedly also failed to act by not investigating Plaintiff's claims of being threatened by Spaide. Plaintiff seeks compensatory and punitive damages against these Defendants, as well as reprimands against them. Id.

With respect to Defendant Spaide, Plaintiff also seeks compensatory and punitive damages, as well as having Spaide "relieved of his duty as Unit Manager" and "reprimanded for his official oppression against [Plaintiff] while on I-Block." Id. Plaintiff also seeks review of his two misconduct charges, dated December 7, 1998 and February 8, 1999.

## II.  Standard of Review

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the Plaintiff's allegations. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the Plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, Plaintiff may be entitled to relief." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir. 1997). It is additionally well-settled that pro se complaints should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972).

4

## III. Discussion

### A. Eleventh Amendment Immunity

In a footnote to their brief in support of the motion to dismiss, Defendants claim Eleventh Amendment Immunity from suit under § 1983 if sued in their official capacities. Plaintiff does not specify in his complaint whether he is suing Defendants in their official or individual capacity, but reading the pleadings liberally, it appears that he is in fact doing both.

State officials sued in their official capacity cannot be held liable for damages under § 1983. Will v. Michigan Dep't of Police, 491 U.S. 58 (1989). However, Defendants can be personally liable for damages under § 1983 when sued in their individual capacities. Hafer v. Melo, 502 U.S. 21 (1991). Further, the Eleventh Amendment does not preclude civil rights claims for equitable relief against governmental officials in their official capacity. Ex Parte Young, 209 U.S. 123, 155-57 (1908); Edelman v. Jordan, 415 U.S. 651, 677 (1974); Koslow v. Pennsylvania, 302 F.3d 161, 166 (3d Cir. 2002).

Therefore, since Plaintiff is suing for both injunctive relief and damages against Defendants in both official and individual capacities, the claims will not be dismissed in their entirety. Any claims for damages against Defendants in their official capacity will be dismissed because of Eleventh Amendment immunity, but claims for damages against Defendants in their individual capacities and claims for injunctive relief will not be dismissed.

5

B.  Statute of Limitations

Defendants also contend that Plaintiff's claims are time-barred and should therefore be dismissed.  In reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276 (1985); Cito v. Bridgewater Twp. Police Dep't., 892 F.2d 23, 25 (3d Cir. 1989).  The United States Supreme Court clarified its decision in Wilson when it held that "courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions."  Owens v. Okure, 488 U.S. 235, 250 (1989).  Pennsylvania's applicable personal injury statute of limitations is two years.  42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).  The statute of limitations "begins to run from the time when the Plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action."  Gentry v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted).

*1. Claims Cumulating on December 7, 1998 and January 21, 1999*

The basis of Plaintiff's action against Defendants Dragovich and McGrady is that they failed to protect Plaintiff from Defendant Spaide.  Specifically, Plaintiff alleges that Defendant McGrady, as Unit Manager Major and PRC Chairman, failed to investigate Plaintiff's complaints of threats made by Spaide and after being made aware of the PRC reports concerning the situation between Spaide and Williams, "deliberately placed

6

[Plaintiff] into an hostile environment and situation." Plaintiff further alleges that he was exposed to tobacco smoke in violation of prison regulations, putting Plaintiff's health at risk. With respect to Defendant Dragovich, Plaintiff alleges that he failed to protect him when he "signed documents" stating that Plaintiff should return to his former housing unit," under Spaide's direct supervision. All of these events took place before the February 8, 1999 altercation between Plaintiff and Spaide. In particular, these actions occurred on or prior to January 21, 1999, when at Plaintiff's PRC review it was determined that he should be released back to the I-Block under Spaide's supervision. Thus, Plaintiff knew or had reason to know of Defendants' alleged deliberate indifference to his safety on or before January 21, 1999.

The incidents surrounding the tobacco smoke and the resulting misconduct charge all occurred in the fall of 1998, apparently cumulating with a misconduct charge on December 7, 1998. Plaintiff therefore knew or had reason to know of Defendant's alleged disregard for his health on or before December 7, 1998.

Plaintiff, however, did not file his action until February 13, 2001, over two years after this decision. Accordingly, Williams' claim based on the failure of Defendants Dragovich and McGrady to protect his safety and health is barred by Pennsylvania's controlling statute of limitations.

   *2. Claims Cumulating on February 8, 1999*

The basis of Plaintiff's claim against Defendant Spaide is his use of physical force in violation of the Eighth Amendment when Spaide allegedly elbowed Plaintiff on

7

February 8, 1999. Defendants argue that because Plaintiff's complaint was not filed until February 13, 2001, his claims are time-barred pursuant to Pennsylvania's two-year statute of limitations. This Court, however, declines to accept Defendants' argument in light of the "mailbox rule" developed by the Supreme Court in Houston v. Lack, 487 U.S. 266 (1988).

In Houston, the Court held that a prisoner's notice of appeal of a habeas corpus petition is "filed" when the prisoner delivers it to prison authorities. Id. at 275-77. The Federal Rules of Appellate Procedure were later amended to reflect this rule. Fed. R. App. Pro. 4(c).[1] Since then, the vast majority of federal courts, including every Court of Appeals, that have considered whether the rule of Houston should be extended to include pro se prisoner complaints have extended the rule. See, e.g., Casanova v. Dubois, 2002 WL 31016477 (1st Cir. Sept. 13, 2002); Aldridge v. Gill, 2001 WL 1580209 at *1 (6th Cir. Dec 06, 2001); Cooper v. Brookshire, 70 F.3d 377 (5th Cir. 1995); Dory v. Ryan, 999 F.2d 679 (2d Cir. 1993); modified on other grounds on reh'g, 25 F.3d 81 (1994); Garvey v. Vaughn, 993 F.2d 776 (11th Cir. 1993) (also applied to Federal Tort Claims Act claim); Hamm v. Moore, 984 F.2d 890 (8th Cir. 1992); Lewis v. Richmond, 947 F.2d 733 (4th Cir. 1991); Dunn v. White, 880 F.2d 1188 (10th Cir. 1989); see also Richard v. Ray, 290 F.3d 810, 813 (6th Cir. 2002) (applying Houston's mailbox rule to "civil

---

1. The rule provides, in relevant part: "If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system." The rule also requires a declaration by the prisoner of the date which he deposited the mail into the system.

complaints filed by pro se petitioners incarcerated at the time of filing," here a medical malpractice complaint); Faile v. Upjohn Co., 988 F.2d 985 (9th Cir. 1993) (applying mailbox rule to discovery responses of a pro se prisoner).

Although the Third Circuit has not ruled on this precise issue, one district court in this circuit has held the mailbox rule inapplicable to pro se prisoner complaints. Jackson v. Nicoletti, 875 F. Supp. 1107, 1111-1114 (E.D. Pa. 1994). However, another court in the Eastern District of Pennsylvania extended the Houston ruling to the filing of a pro se prisoner's § 1983 complaint. Rivers v. Horn, No. 00-3161, 2001 WL 312236 (E.D. Pa. March 29, 2001). Furthermore, the Court of Appeals in this circuit has extended Houston to filing a pro se prisoner's habeas petition in state and federal cases, Burns v. Morton, 134 F.3d 109, 112 (3d Cir. 1998), to a motion for reconsideration in a § 1983 case, Smith v. Evans, 853 F.2d 155 (3d Cir. 1988), to a notice of appeal in a bankruptcy appeal, In re Flanagan, 999 F.2d 753, 758 (3d Cir.1993), and to a motion for a rehearing in a bankruptcy case, In re Rashid, 210 F.3d 201, 204 (3d Cir. 2000). In Burns, the Court indicated its approval of other courts' extensions of the Houston rationale to the filing of § 1983 complaints. Burns, 134 F.3d at 112-13 ("Many have expressed their concern with the pro se prisoner's lack of control over the filing of documents . . . . We share their concern."). Therefore, since every other Circuit to consider the issue has so ruled and since the Third Circuit has extended the mailbox rule to other contexts involving pro se prisoners, this Court holds that the mailbox rule applies in this instance to Plaintiff's filing of his § 1983 complaint.

In his reply brief, Plaintiff offers documentation to support his assertion that he attempted to mail his complaint on February 2, 2001 via certified postage. (Doc. No. 19, Exhibit E, copy of Grievance No. GRN-0317-01). However, due to a change in the United States Postal Service policy regarding the appropriate return receipt card to be used, Plaintiff's legal package was returned to him by the prison mail room staff. Id. On February 5, 2001, Plaintiff once again attempted to mail his complaint using the new cards. Id. However, it was again returned by the mail room staff, this time for improper placement of the return receipt card. Id. Thus, Plaintiff's complaint was not mailed until February 9, 2001. Id. It was received by the Clerk of Court for filing on February 13, 2001.

For the purposes of this motion to dismiss, the Court accepts as true Plaintiff's assertions that he first attempted to mail his complaint on February 2, 2001 and had to mail the complaint three times before it was received by the Court for filing. Plaintiff's situation, where he had no control over his mail once it left his hands and entered into the prison's mail system, is the type of situation that the mailbox rule was created to remedy. See Burns, 135 F.3d at 113 (noting that once a prisoner has placed his habeas petition in the hands of prison authorities for mailing, "he is completely unable to ensure that the district court will receive his petition promptly; he remains entirely at the mercy of prison officials."). Had Williams not been incarcerated, even as a pro se plaintiff, he would not have encountered the difficulties he did in the prison mail system– if he had the wrong card or improper placement at the post office, the postal worker would presumably

correct the problem right away. Even if Williams's first package had been returned to him and he was not incarcerated, he would have been able to avail himself of express mailing options in order to meet the February 8, 2001 deadline[2] that were not available to him as an inmate. Instead, Plaintiff's legal package was returned to him twice to go through the lengthy prison mailing system due to technical errors and changes in policy beyond his control.

Plaintiff has submitted enough evidence that at this procedural stage, the Court concludes that Williams's complaint against Defendant Spaide was timely filed when he mailed in on February 2, 2001. Accordingly, Defendants' motion to dismiss with respect to Defendant Spaide will be denied.

---

2. In his reply brief, Plaintiff indicates full awareness of the time limitation on his claim. He filed a grievance in the prison over the mail incident, stating that "my deadline for filing civil action was Feb. 8, 2001." Reply Br. Exhibit E, GRN-0317-2001.

11

III. **Order**

NOW, THEREFORE, THIS 9th DAY OF Oct, 2002, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss (Doc. No. 13) is GRANTED with respect to Defendants Martin L. Dragovich and James J. McGrady.

2. Defendants' motion to dismiss is DENIED with respect to Plaintiff's Eighth Amendment claim against Defendant Richard L. Spaide.

_____
YVETTE KANE
United States District Judge

YK:dlb