**Westlaw Attached Printing Summary Report for LLOYD,LINDA S 2922010**

| | |
|---|---|
| Date/Time of Request: | Thursday, July 22, 2004 10:01:00 Central |
| Client Identifier: | C |
| Database: | DCT |
| Citation Text: | 1999 WL 158471 |
| Lines: | 514 |
| Documents: | 1 |
| Images: | 0 |

(C) 2004. Copyright is not claimed as to any part of the original work prepared by a U.S. government officer or employee as part of that person's official duties. All rights reserved. No part of a Westlaw transmission may be copied, downloaded, stored in a retrieval system, further transmitted or otherwise reproduced, stored, disseminated, transferred or used, in any form or by any means, except as permitted in the Westlaw Subscriber Agreement, the Additional Terms Governing Internet Access to Westlaw or by West's prior written agreement. Each reproduction of any part of a Westlaw transmission must contain notice of West's copyright as follows: "Copr. (C) 2004 West, a Thomson business. No claim to orig. U.S. govt. works." Registered in U.S. Patent and Trademark Office and used herein under license: KeyCite, Westlaw and WIN. WIN Natural Language is protected by U.S. Patent Nos. 5,265,065, 5,418,948 and 5,488,725.



1999 WL 158471                                                                                                           Page 1
**(Cite as: 1999 WL 158471 (E.D.Pa.))**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Frank ACOSTA,
v.
James McGRADY; Scott Warren; Jane Goodman;
c/o Hopkins; c/o Carl; Lori Elliott;
Mary Canino; Steven Datchko.

No. CIV.A. 96-2874.

March 22, 1999.

*ORDER AND MEMORANDUM*

DUBOIS.

*ORDER*

***1** AND NOW, to wit, this 22nd day of March, 1999, upon consideration of defendants' Motion for Summary Judgment (Doc. No. 46, filed June 16, 1998), and plaintiff's Response To Opposition To Summary Judgment (Doc. No. 56, filed July 14, 1998), for the reasons set forth in the accompanying Memorandum, IT IS ORDERED that the defendants' Motion for Summary Judgment is GRANTED and Judgment is ENTERED in favor of defendants, James McGrady, Scott Warren, Jane Goodman, Corrections Officer Richard Hopkins, Corrections Officer Rick Carl, Lori Elliott, Mary Canino, and Steven Datchko, and against plaintiff, Frank Acosta.

*MEMORANDUM*
A. Background.

Plaintiff Frank Acosta is an inmate who at all times material to this suit was incarcerated at the State Correctional Institution at Mahanoy ("SCI Mahanoy"). In his *pro se* Amended Complaint filed under 42 U.S.C. § 1983, he claims that defendants, who at all times material to this suit served as officers and/or employees at SCI Mahanoy, violated his civil rights under the First, Eighth and Fourteenth Amendments; plaintiff seeks damages and injunctive relief. Named as defendants are James McGrady, the former Security Captain, former Unit Manager Scott Warren, former Mail Room Supervisor Jane Goodman, Corrections Officer ("CO") Hopkins, CO Carl, former Corrections Counselor Lori Elliott, Department of Corrections ("DOC") Hearing Examiner Mary Canino, and Lieutenant Steven Datchko. Defendants now move for summary judgment on all of plaintiff's claims.

Plaintiff's Amended Complaint alleges that: (1) plaintiff received numerous false misconduct charges; (2) he was denied due process at his misconduct hearings; (3) some of his personal, legal and religious property was confiscated, and never returned; (4) he was not present when his property was searched; (5) he was denied incoming mail for two to three months; (6) he was not allowed to contact his family for eighteen months while he was serving time in the Restricted Housing Unit ("RHU"); (7) he was not allowed to use the telephone to make emergency telephone calls for the eighteen months he was in the RHU; (8) he was physically assaulted by CO Carl; and (9) he was denied adequate medical treatment while he was confined in the RHU. In its Memorandum and Order entered August 2, 1996, the Court dismissed as frivolous plaintiff's claims relating to loss of personal and legal property, the search of his property, and his medical treatment. The Court permitted the following claims to proceed against the following defendants:

1. Plaintiff's claims that he received false misconduct charges and was denied due process at his misconduct hearings, resulting in his confinement in the Restricted Housing Unit at SCI Mahanoy for a period of eighteen (18) months, against defendants McGrady, Datchko, Warren, Goodman, Elliott, Canino, and COs Carl and Hopkins;

2. Plaintiff's claim regarding the alleged destruction of his religious materials, against

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 158471                                                                                                       Page 2
**(Cite as: 1999 WL 158471 (E.D.Pa.))**

defendants Hopkins, Datchko, and McGrady;

*2 3. Plaintiff's claim regarding the denial of his incoming mail for two to three months, against defendants McGrady and Goodman;

4. Plaintiff's claim that he was denied the opportunity to contact his family and to make emergency telephone calls for eighteen (18) months while in the RHU, against defendants McGrady, Warren and Elliott;

5. Plaintiff's claim that he was physically assaulted by CO Carl, against defendant Carl.

See Doc. No. 7, Order entered August 2, 1996, at 2-4.

The Court must now examine each of the five remaining claims to determine if defendants are entitled to summary judgment.

B. Discussion.

1. Standard of Review

In deciding a motion for summary judgment the Court must determine whether there exist any triable issues of fact. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 247-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant the motion if it finds that the pleadings, together with depositions, admissions, answers, interrogatories, and affidavits present "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In responding to a motion for summary judgment, the non-moving party must present "more than a mere scintilla of evidence in its favor" and may not rely on unsupported assertions or conclusory allegations. *See Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citation omitted). "When considering a motion for summary judgment, the court must view all evidence in favor of the non-moving party.... Additionally, all doubts must be resolved in favor of the non-moving party." *Securities and Exchange Commission v. Hughes Capital Corp.,* 124 F.3d 449, 452 (3d Cir.1997) (citations omitted).

Plaintiff Acosta has been given ample time to respond to defendants' motion for summary judgment, which was filed on June 26, 1998. Plaintiff initially responded with a two page submission which merely restated a few of the claims and facts already asserted in his Amended Complaint. By Order dated August 6, 1998, the Court stayed proceedings for sixty days to allow plaintiff an opportunity to secure new counsel; [FN1] after plaintiff failed to secure counsel, by Order dated November 24, 1998, the Court granted plaintiff until December 13, 1998 to file a supplemental response to defendants' motion for summary judgment. The November 24 Order also stated that, in the event plaintiff did not file and serve such a supplemental response, the Court would decide defendants' motion on the present state of the record. Plaintiff has not filed any such response with the Court.

> FN1. On November 11, 1996, plaintiff filed a motion requesting, *inter alia,* appointment of counsel by the Court; that portion of the motion was granted by the Court by Order dated December 18, 1996. By Order dated June 6, 1997, attorneys George S. Bobnak and Nancy Stewart were appointed to represent plaintiff under the Prisoner Civil Rights Panel Program. On May 27, 1998, counsel for plaintiff filed a motion for leave to withdraw as counsel; that motion was granted by Order dated June 2, 1998. Under the circumstances presented the Court decided not to try to appoint new counsel to represent plaintiff.

Once a party has moved for summary judgment, the non-moving party must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.' " *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Thus, plaintiff has an obligation to present affirmative evidence to support his claims. *See Anderson,* 477 U.S. at 257. Although plaintiff's response to defendants' motion for summary judgment contains only facts already included in his Amended Complaint, and thus does not strictly speaking provide facts "beyond the pleadings," those facts, together with the many specific incidents alleged in the Amended Complaint, the deposition of plaintiff, the defendants' answers to plaintiff's interrogatories, and copies of many of the misconduct reports and other documents generated

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 158471                                                                                                          Page 3
**(Cite as: 1999 WL 158471 (E.D.Pa.))**

at SCI Mahanoy regarding plaintiff, all part of the record before the Court, provide the Court with an adequate evidentiary basis to rule on the merits of the instant motion. *See, e.g., Jones v. Sheenan, Young & Culp,* 82 F.3d 1334, 1338 (5th Cir.1996) (stating that Fed.R.Civ.P. 56 imposes on the non-moving party "the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment.")

2. Misconduct Charges Against Plaintiff and Incarceration in the Restricted Housing Unit

**\*3** Plaintiff claims that he was the victim of numerous false misconduct charges and was denied due process at misconduct hearings, resulting in his confinement in the RHU at SCI Mahanoy for a period of eighteen months. According to the Amended Complaint, defendants McGrady, Datchko, Warren, Goodman, Elliott, Canino, and COs Carl and Hopkins falsified or conspired to falsify misconduct reports, and "knowingly" conspired to deprive plaintiff of due process rights and subject him to the "mental cruelty" of unwarranted confinement in the RHU. Amended Complaint at 7.

The factual background of this claim, while lengthy, can be summarized as follows: on April 18, 1994, the mail room at SCI Mahanoy received a package addressed to plaintiff, containing two jogging suits from Bloomingdale's department store. Before that date, the security captain at SCI Mahanoy, defendant McGrady, had received a telephone call from Bloomingdale's informing him that a "Frank Acosta" had purchased the jogging suits by telephone with a fraudulently used credit card number. Subsequently, corrections officers under orders from defendant McGrady searched plaintiff's cell and confiscated documents containing telephone numbers (including Bloomingdale's), Social Security numbers which were not plaintiff's, and scripts which ostensibly described various means of obtaining personal information from unsuspecting individuals. This discovery led defendant McGrady to conclude that plaintiff had attempted to purchase the jogging suits by means of a credit card fraud. Accordingly, McGrady wrote a misconduct report charging plaintiff with three misdemeanors, including receiving stolen property and possession of contraband.

At a disciplinary hearing on April 26, 1994, the DOC hearing examiner, Mary Canino, refused to allow plaintiff representation due to his failure to promptly return his request for representation and witnesses in a timely manner. Plaintiff refused to proceed with the hearing without representation, and defendant Canino decided, based on a preponderance of the evidence before her, that plaintiff was guilty of the misconduct charged. Plaintiff was sanctioned, *in absentia,* to sixty days of disciplinary confinement in the RHU; on appeal to the Central Office Review Committee, this decision was vacated and the case remanded for a rehearing in which plaintiff was to be permitted the requested representation and given the right to call witnesses. On August 4, 1996, defendant Canino conducted a rehearing in which plaintiff denied ever receiving the package from Bloomingdale's and denied that the documents found in his cell relating to fraud belonged to him. Defendant Canino found McGrady's account, in conjunction with the materials found in plaintiff's cell, to be more credible than plaintiff's denials, and once again sanctioned plaintiff to sixty days disciplinary time and "revocation" [sic] of contraband.

Numerous misconduct reports followed plaintiff's initial confinement in the RHU. On May 17, 1994, defendant McGrady charged plaintiff with unauthorized use of the mail for corresponding, without permission, with inmates at SCI Pittsburgh. At plaintiff's disciplinary hearing on May 19, 1994, plaintiff admitted writing the letters but argued that the misconduct was untimely, because the letters had been written and sent in January or February of 1994. Defendant Canino found Acosta guilty of the misconduct charge and sanctioned him to fifteen days disciplinary custody. Other misconduct reports and hearings followed, each hearing resulting in additional sanctions imposed on plaintiff by Hearing Examiner Canino: on June 20, 1994 (unauthorized use of the mail or telephone, thirty days RHU); on September 20, 1994 (unauthorized use of the telephone, thirty days RHU); on September 22, 1994 (possession of contraband documents relating to fraud, sixty days RHU); on September 29, 1994 (assault and threatening an employee with bodily harm, ninety days RHU; and on January 3, 1995 (threatening an employee with bodily harm and using abusive or obscene language to an employee, ninety days RHU). In sum, plaintiff spent from April of 1994 to June 11, 1995 in the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 158471                                                                                           Page 4
(Cite as: 1999 WL 158471 (E.D.Pa.))

RHU.

**\*4** Plaintiff claims that the defendants named in this claim violated his Fourteenth Amendment right to due process by either knowingly filing false misconduct charges or, in the case of defendant Canino, by wrongfully finding him guilty of the misconducts charged and thus wrongfully sanctioning him to disciplinary custody in the RHU. As a preliminary consideration, it is important to state that prisoners do not have a constitutionally protected liberty interest in remaining in the general population. *See Sandin v. Connor,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Drexel v. Vaughn,* 1998 WL 151798 at \*6-7 (E.D.Pa. April 2, 1998). Thus plaintiff cannot claim that his lengthy incarceration in the RHU, standing alone, establishes any violation of his Fourteenth Amendment due process rights. Unless plaintiff can prove that his confinement in disciplinary custody amounted to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," *Sandin,* 515 U.S. at 485, his transfer from general population to the RHU implicates no constitutional protections. *See Griffin v. Vaughn,* 112 F.3d 703, 706-8 (3d Cir.1997) (holding that confinement in an RHU for up to 15 months without any pre-transfer hearing implicated no protected due process interest). "[T]he baseline for determining what is 'atypical and significant'--the 'ordinary incidents of prison life'--is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law ... '[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.' " *Griffin,* 112 F.3d at 706 (quoting *Sandin,* 515 U.S. at 485).

The record shows that plaintiff's stay in the RHU was in no way unusual. By plaintiff's admission, he received three meals a day (although they were often cold by the time they reached him), yard time every day, and a shower twice a week. He had access to books, writing materials and religious materials, and was able to practice his faith. Dep. of Frank Acosta, at 20-32. While plaintiff's confinement in the RHU was, without a doubt, a serious hardship, that hardship was the intended result of the SCI Mahanoy disciplinary process. There is no allegation that plaintiff's treatment in the RHU was in any way inconsistent with the guidelines set out in the SCI Mahanoy RHU L-5, the Inmate's Orientation Manual. Thus, the incarceration of plaintiff in the RHU was "within the expected parameters" of plaintiff's sentence and implicated no protected due process rights.

Plaintiff alleges that the officers who charged the misconducts against him did so maliciously and fraudulently. The filing of charges, even those later proven to be false, is not a constitutional violation so long as the inmate is provided with due process, unless the charges were filed in retaliation for the exercise of a constitutional right. *See Freeman v. Rideout,* 808 F.2d 949 (2d Cir.1986); *Flanagan v. Shively,* 783 F.Supp. 922, 931-32 (M.D.Pa.), *aff'd,* 980 F.2d 722 (3d Cir.1992). Plaintiff provides no evidence that defendants were retaliating against him for any reason, much less for the exercise of some constitutional right, and there is no evidence that any of the charges against him were proven to be false; moreover, there is no evidence of the motivation of those the plaintiff alleges were conspiring against him. Because no facts have been presented which would support an allegation of retaliatory sanctions against plaintiff, plaintiff has failed to produce evidence of any constitutional violation which would be cognizable under § 1983.

**\*5** Finally, plaintiff claims that defendant Canino wrongfully sanctioned him to disciplinary custody in the RHU. Under *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), a prisoner is entitled to written notice of the charges against him and the opportunity to be heard in his own defense. Plaintiff received such notice, by way of written misconduct charges, and was eventually given the right to representation and a meaningful defense in each of his misconduct hearings. Moreover, the record establishes that there was credible evidence supporting the sanctions imposed by defendant Canino in each case. *See Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (where prison disciplinary board's decision was supported by "some evidence" in the record, decision resulting in deprivation of liberty interest comported with the requirements of due process.) Even evidence that could be characterized as "meager" meets the "some evidence" standard. *Id.* at 456. Under this standard, the record establishes that defendant Canino had sufficient credible evidence before her at each misconduct hearing to justify the resulting sanction.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 158471                                                                                                                                      Page 5
**(Cite as: 1999 WL 158471 (E.D.Pa.))**

Plaintiff has thus failed to offer any facts which would support a conclusion that his due process rights were violated by his multiple disciplinary sanctions, and his claim of due process violations is without basis in law.

3. Confiscation and Failure to Return Some of Plaintiff's Religious Materials

Plaintiff states that the authorities at SCI Mahanoy never returned certain religious books and clothing which had been confiscated when he was sanctioned to disciplinary custody in the RHU. Among the confiscated articles was plaintiff's Koran, which was a hardcover book and thus prohibited in the RHU. Plaintiff admits that all such articles were contraband in the RHU, and thus confiscatible under prison regulations. Plaintiff claims, however, that the failure to return these religious materials after his departure from the RHU and from SCI Mahanoy itself violated his civil rights. The defendants, in response, allege that plaintiff did receive his prayer rugs, kufis and his Koran, although they do not dispute that other items may have been retained by the DOC.

To justify a burden on a prisoner's free exercise of his religion, there must be a legitimate penological interest which supports the imposition of the burden. See *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *St. Claire v. Cuyler,* 634 F.2d 109, 116 (3d Cir.1980) (upholding prison officials' ban of all headgear, including kufis, in prison dining areas as valid under the First Amendment). [FN2] The Court must inquire whether prison regulations restricting inmates' First Amendment rights operate in a neutral fashion, without regard to the content of the expression. See *Bell v. Wolfish,* 441 U.S. 520, 551, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Pell v. Procunier,* 417 U.S. 817, 828, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). A second factor relevant in determining the reasonableness of a prison restriction is whether there are alternative means of exercising the right that remain open to prison inmates. See *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 131, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Courts should be particularly conscious of the "measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation." *Pell,* 417 U.S. at 827. A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. See *Turner v. Safley,* 482 U.S. 78, 90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). "In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order." *Id.* at 90. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. See *Block v. Rutherford,* supra 468 U.S. 576, 587 (1984).

> FN2. While the *St. Claire* standard was called into question by the passage, in 1993, of the Religious Freedom Restoration Act (RFRA), *see, e.g., Muslim v. Frame,* 891 F.Supp. 226, 228 (E.D.Pa.1995), the Supreme Court recently declared RFRA inapplicable to state regulations and agencies. *See City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). In light of this holding, the *St. Claire* standard remains an accurate statement of the law in the Third Circuit.

**\*6** In the instant case, the regulation of personal property in the RHU applied to all religious materials outside of a soft-cover Bible, Koran or other sacred text. RHU Inmate's Orientation Manual, at 7. By plaintiff's own admission, he was able to practice his religion while in the RHU and had access to an Islamic chaplain. Dep. of Frank Acosta, at 50-56. Thus the regulation was both neutral and permitted the inmates alternate forms of religious worship. The question, then, is whether the exclusion of personal religious property from the RHU is a reasonable regulation, in light of the deference due such regulations by the Court. Under the rule of *St. Claire,* if the wearing of religious articles can be prohibited in a general population area such as a dining hall, such articles can certainly be restricted in the highly controlled environment of the RHU. Prison guards in the RHU check on the inmates only occasionally, and are thus understandably concerned about the possible improper use of items which inmates bring into the RHU. In light of the inherently restricted environment of the RHU, the Court believes that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 158471  Page 6
**(Cite as: 1999 WL 158471 (E.D.Pa.))**

regulations barring certain personal religious property in the RHU are inherently reasonable where, as here, the prisoner is afforded alternate means of expressing and observing his faith.

The failure of prison officials to return certain items belonging to plaintiff does not constitute a violation of plaintiff's rights under either the First, Fourth, or Fourteenth Amendments. A prisoner may establish an unconstitutional deprivation of property by showing confiscation of materials either in retaliation for the exercise of constitutional rights or where, as a result, there was a denial of access to the courts. *Hodgin v. Agents of Montgomery County,* 619 F.Supp. 1550, 1553-54 (E.D.Pa.1985). Absent proof of retaliation or denial of access, plaintiff must demonstrate that the loss of materials itself amounted to a violation of procedural due process under the standard set forth in *Hudson v. Palmer,* 468 U.S. 517, 533-35, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Under *Hudson,* even intentional deprivations of property, without more, are not constitutionally actionable if state law offers a meaningful post-deprivation remedy. *Hudson,* 468 U.S. at 533-35.

Pennsylvania provides an adequate post-deprivation remedy for defendant's claim. An inmate grievance procedure, which exists in Pennsylvania's correctional system, can be sufficient for this purpose. *Id.* at 536 n. 15; *Brokenbough v. Smith,* 1996 WL 162345, at *2 (E.D.Pa. Apr.4, 1996) (noting sufficiency of inmate grievance procedure); *Austin v. Lehman,* 893 F.Supp. 448, 454 (E.D.Pa.1995) (inmate grievance procedure constituted adequate post-deprivation remedy for denial of free cigarettes). In addition, the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8550 (1982), contains a waiver of the defense of sovereign immunity for willful misconduct. *See Reid v. Seville,* 1996 WL 421901, at *4 (E.D.Pa. July 19, 1996) (statute permits suit against state employees where conduct alleged is willful, malicious, criminal or fraudulent). Without ruling on the adequacy of the grievance procedure, standing alone, the grievance procedure and this statute, taken together, satisfy the requirements of post-deprivation due process. *See Reid,* 1996 WL 421901, at *4 (adequate remedy for prisoner's loss of legal papers exists under Pennsylvania Tort Claims Act); *Hodgin,* 619 F.Supp. at 1553-54 (prisoner could pursue common-law remedies against officials for confiscation of legal materials); *Austin,* 893 F.Supp. at 454 (prisoner has state court action for property deprivation). Given the facts as presented, there is no evidence of retaliatory conduct on the part of defendants, of denial of access to the courts, or of the non-existence of an adequate post-deprivation state remedy. Thus plaintiff's claim fails as a matter of law to state a constitutional violation as required under § 1983.

4. Denial of Plaintiff's Incoming Mail

**\*7** Plaintiff claims that he received little or no mail for three months while confined in the RHU, and was in addition prevented from contacting his friends and family, all in violation of his First Amendment right of free association. Defendants respond that defendant McGrady only monitored and delayed specific pieces of mail from inmates at other correctional institutions, with the approval of the Superintendent of SCI Mahanoy. Moreover, defendants point to portions of plaintiff's deposition in which he admits being able to correspond with close family whose addresses he had memorized before the confiscation of his address books during the April, 1994 search of plaintiff's cell. Defendants state that a procedure was put in place whereby plaintiff could request and receive addresses from defendant McGrady through his counselor, defendant Elliott. Plaintiff appears to have successfully utilized this procedure on at least one occasion.

Censorship of mail in a prison is permissible if it furthers security, order, or rehabilitation, and is conducted with minimal procedural safeguards. *See Procunier v. Martinez,* 416 U.S. 396, 413-14, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Such regulations are "valid if [they are] reasonably related to legitimate penological interests." *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). In the instant case, plaintiff had been found guilty of misconducts involving fraud, misuse of the telephone, and improper use of the mail. It was entirely reasonable under these circumstances for prison officials to monitor plaintiff's correspondence. Despite this, plaintiff was permitted to send mail, and was permitted access (albeit restricted, through an official intermediary) to the information in his address book. Plaintiff was

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 158471                                                                                     Page 7
**(Cite as: 1999 WL 158471 (E.D.Pa.))**

in fact able to communicate with his family. In light of these facts, plaintiff has failed to present any evidence which would support his allegation of a constitutional violation stemming from the limitations imposed on his ability to correspond and receive correspondence in return.

5. Denial of Plaintiff's Telephone Privileges

Plaintiff claims that he was denied access to the telephone while incarcerated in the RHU; specifically, plaintiff points to the denial of the right to call his wife following the receipt of a mailgram informing plaintiff of his mother-in-law's death, and to the denial of the right to call "the courts" or, as it appears in plaintiff's deposition, his attorney, in response to a letter sent to plaintiff relating to a Post Conviction Relief Act (PCRA) petition. Amended Complaint at 4. Defendants respond that the denial of a phone call cannot, without more, serve as the basis for a claim of a First Amendment violation.

Telephone calls necessary to conduct legal business have received a higher degree of protection from the courts than telephone privileges generally. *See Ramos v. Vaughn,* 1995 WL 386573 at *8 (E.D.Pa. June 27, 1995). A prisoner has a constitutional right to use a telephone only if no other reasonable means of communication are available to him. *See, e.g., Ingalls v. Florio,* 968 F.Supp. 193, 203 (D.N.J.1997); *see also Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir.1986) (stating that prisoners have a First Amendment right to telephone access, subject to reasonable security limitations). However, the denial of one emergency call, without any showing of injury or even that a true emergency existed, does not state a constitutional claim. *Higgins v. Coombe,* 1997 WL 328623, at *4-5 (S.D.N.Y. June 16, 1997).

***8** In order to state a claim for deprivation of telephone access, an inmate must make some showing of prejudice or actual injury as a result of the prison officials' conduct. *See Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989); *Peterkin v. Jeffes,* 855 F.2d 1021, 1041 (3d Cir.1988). In a legal deprivation claim, plaintiff must allege specific instances of prejudice to his legal rights, such as missed filing deadlines, a denial of legal assistance to which he was entitled, or the loss of a case which he should have won. *See Martin v. Davies,* 917 F.2d 336, 340 (7th Cir.1990).

Plaintiff, as has already been established, was at all times able to correspond with his wife and close family members. He thus was afforded a reasonable alternative which allowed him to correspond with both his wife and his attorney. Nor has plaintiff come forward with any evidence that his mother-in-law's death was an "emergency" requiring his presence on the telephone. Although plaintiff does allege that his PCRA petition was denied as a result of his inability to telephone the court or his attorney, no evidence supporting this claim has been provided to the Court. In ruling on a motion for summary judgment, a court may not rely on unsupported assertions or conclusory allegations. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citation omitted). Because plaintiff has come forward with no evidence either that a genuine emergency mandated these telephone calls, or that his PCRA petition was denied due to his inability to place such calls, no constitutional violation on the part of defendants can be established.

6. Assault by a Corrections Officer

Plaintiff claims that he was assaulted by defendant CO Carl on or about September 27, 1994, as he was being led to a misconduct hearing. According to plaintiff, defendant Carl pulled sharply on his arms, which were handcuffed behind his back, and slammed him into the wall for no reason. Plaintiff claims he suffered from swollen hands and headaches for a few days after this incident. The defendant, in response, claims that plaintiff threatened him and assaulted him with his elbow, at which point they scuffled and plaintiff was pressed into the wall.

Even assuming that plaintiff's account is true, this incident does not rise to the level of an Eighth Amendment violation. Under the two-part test for determining if such a violation has concerned, there is both an "objective" and "subjective" element. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective prong is satisfied if the prisoner is subjected to the "unnecessary and wanton infliction of pain." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The subjective element examines the motive of the prison official: to state an Eighth Amendment claim, the plaintiff must show a culpable state of mind on the part of the part

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1999 WL 158471 Page 8
**(Cite as: 1999 WL 158471 (E.D.Pa.))**

of the defendant. *Id.*

**\*9** Plaintiff fails to meet either part of this burden. Although no court approves of physical violence in the correctional system, courts have found certain physical confrontations to be merely *de minimis* and not violative of the constitution. *See, e.g., Barber v. Grow,* 929 F.Supp. 820 (E.D.Pa.1996) (holding that pulling a chair out from under inmate, causing him to fall and suffer loose teeth, was not an Eighth Amendment violation); *Colon v. Wert,* 1997 WL 137172 (E.D.Pa. March 21, 1997) (allegation that guard slammed a cell door into prisoner's chest, thereby aggravating per-existing back and neck injuries, found to be *de minimis* ); *Robinson v. Link,* 1994 WL 463400 (E.D.Pa. Aug.25, 1994) (allegations that prisoner was handcuffed, dragged along a corridor, and hit in the back were found to be *de minimis* ); *Brown v. Vaughn,* 1992 WL 75008 (E.D.Pa. March 31, 1992) (allegations that guard struck inmate in the chest and spit on him were *de minimis* ); *cf. Hudson v. McMillan,* 503 U.S. 1, 10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (holding that a beating given by two prison guards, resulting in minor bruises, swelling, and loosened teeth, where a supervisor stood by and told guards "not to have too much fun," rose beyond *de minimis* physical violence and constituted a violation of the Eighth Amendment). In light of these rulings it is apparent that even if the Court were to credit plaintiff's version of the event over the sworn deposition of defendant Carl, the physical contact alleged was constitutionally *de minimis* and thus does not give rise to an Eighth Amendment violation..

Assuming *arguendo* that the physical contact in this incident was not *de minimis,* plaintiff has offered no evidence whatsoever of defendant's motivation other than alleging that the alleged abuse was done "wanturly and sadistically" [sic] to inflict "mental stress and cruelty." Amended Complaint at 7. Because plaintiff has come forward with no evidence of a culpable state of mind on the part of defendant Carl other than bare allegations, plaintiff has failed to meet his burden in light of the contrary evidence offered by defendant. Summary judgment must therefore be granted on behalf of defendant Carl on this claim.

C. Conclusion.

For the foregoing reasons, defendants' Motion for Summary Judgment is granted and judgment is entered in favor of all defendants and against plaintiff.

1999 WL 158471, 1999 WL 158471 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works