In the United States District Court
For the Middle District of Pennsylvania

James H. Williams
        (Plaintiff)                          Civil No# 1:CV-01-0280

        vs

Richard L. Spaide                            Judge Kane
        (Defendant)

Plaintiff's Brief In opposition To
Defendant's motion For Summary Judgment

FILED
HARRISBURG, PA

DEC 23 2004

MARY E. D'ANDREA, CLERK
Per _____

Statement of the Case

    this is a pro se inmates civil Rights action brought
pursuant to 42 U.S.C § 1983. James H. Williams (Plaintiff)
is an inmate currently housed at S.C.I. Greene
    (though Plaintiff have been temporary housed at S.C.I.
Mahanoy For Court appearance).
    the allegations in Plaintiff's Complaint arouse
during the time Plaintiff was housed at the state correctional
Institution (S.C.I.) at Mahanoy.
    Plaintiff allegation alleges that Richard Spaide
(Defendant) violated his Eighth Amendment Right by the
use of physical force.
    Plaintiff Requests compensatory and punitive
damages as well as court costs, and filing fees.
    Plaintiff also Requests that the court discipline
Defendant for his action. On February 8, 1999

Defendant filed a motion to Dismiss on September 21, 2001, which was granted in part and denied in part on October 10, 2002. The order dismissed Defendants Dragovich and McGrady, and some claims against Defendant Spaide, but denied the motion to dismiss as to Defendant Spaide, and an incident of alleged use of physical force on February 8, 1999.

Defendant Spaide filed an answer, discovery ensued and now Defendant Spaide files a motion for Summary judgment addressing the remaining issues.

Plaintiff filed first request for admissions, Request for production of documents and first set of Interrogatories to Defendant. Defendant responded to some and not all claiming Request was too overly broad and vague with objection Defendant Spaide does not understand the question.

Plaintiff filed Second request for admissions, Request for production of documents and second set of Interrogatories to Defendant instead of filing motion to compel. to no avail.

By order of this Court dated September 30, 2004 Plaintiff Rec'd Court order October 7, 2004 Thursday, directing Plaintiff to file a brief in opposition to Defendant motion for Summary judgment (D.C.C 51) and statement of Material facts (D.C.C 52) with brief in support (D.C.C 53) within 15 days of order. Now Plaintiff files Brief in opposition to Defendant motion for Summary Judgment.

On October 14, 2004 Plaintiff filed Notice of change of Address, Motion for Enlargement of time to file reply in opposition to Defendant's statement of Materials facts and Motion for Summary Judgment. Requesting dead-line for October 28, 2004. do to fact S.C.I. Greene staff decline to follow D.O.C policy on Photo Copy legal materials.

## Statement of Facts.

The facts relevant to this Brief in opposition to Defendants motion for summary judgment can be found in Plaintiff reply in opposition to Defendants statement of Materials Facts page# 2 statement of Facts. in support of Plaintiff Brief in opposition to Defendant motion for Summary Judgment.

## Questions Presented

I. Whether, as a Matter of law, Defendant spaide motion for Summary Judgment should be denied.

A) Whether Plaintiff evidence indicates that Defendant Spaide Unit Manager action clearly shows malicious intent callous indifference thoughtless disregard for the consequences of his action and being deliberately indifference toward Plaintiff safety. when he conspired to have Plaintiff returned back on his Unit after Plaintiff threaten him with bodily harm.' Resulted in Plaintiff being Elbowed)

B) Whether, even if Plaintiff allegations of being Elbowed is not supported by documention. nevertheless, Plaintiff evident would clearly preclude Summary dismissal as long as pleading would permit recovery under any theory of law. Fed. Rules. Civ. Proc. Rule 12(b)(6) 28 U.S.C.A. 42 U.S.C.A. § 1983.

On the grounds;

1. Outrageous conduct or abuse of official power clearly rises to level of § 1983 claim.

2. Violation of Eighth Amendment or due process clause can be made out for purposes of § 1983 claim without use of actual force against inmate U.S.C.A. Const Amends. 8, 14 42 U.S.C.A. § 1983.

3. Due process clause of Fourteenth Amendment protects individuals liberty interest in personal security. U.S.C.A. Const. Amend. 14.

4. Plaintiff allegations that Defendant Spaide threaten him by stating. Plaintiff will be returned back to his unit and we will ~~discuss~~ deal with it when Plaintiff return. although D.O.C. policy dictates otherwise. stated claim for invasion of due process liberty interest.

c) <u>Whether Plaintiff exhaust his administrative remedies with respect to complaint filed against Defendant Spaide?</u>

<u>Argument</u>

II <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admission on files, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(c) (emphasis added)

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.

<u>Celotex Corp v. Catrett</u> 477 U.S. 317, 323-24, 106 S.ct. 2548.

91 L.Ed, 2d 265 (1986)                    (4)

the moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. <u>Celotex</u> at 323, 106 S.ct 2548.

He or she can discharge that burden by "showing that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u> at 325, 106 S.ct 2548.

Issue of fact are genuine "only if a reasonable jury considering the evidence presented, could find for the non-moving party." <u>Childers v. Joseph</u>, 842 F.2d 689, 693-94, (3d Cir. 1988) citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.ct 2505, 91 L.Ed. 2d 202 (1986)

Materials facts are those which will affect the outcome of the trial under governing law. <u>Anderson</u> at 248, 106 S.ct 2505. The court may not weigh the evidence or make credibility determinations <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998) In determine whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party <u>Boyle</u> at 393; <u>White v. Westinghouse Electric Co.</u>, 862 F.2d 56, 59 (3d Cir. 1988).

If the moving party satisfies its burden of establishing a prima facie case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to materials facts, but must show sufficient evidence to support a jury verdict in its favor. <u>Boyle</u> at 393 (quoting, inter alia, <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.ct 1348, 89 L.Ed. 2d 538 (1986)

Applying these standards to this case, it becomes clear that plaintiff can establish material facts and state-ment of claim, as the following arguments will show Defendant Spaide as unit manager, acted with deliberate or callous indifference to plaintiff needs liberty interest in personal security and as unit manager abused his governmental power, or employing it as an instrument of oppression toward plaintiff.

(5)

The touchstone of due process is protection of the individual against arbitrary action of government. Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government"

To the contrary of Defendant claims. Defendant did violated Plaintiff's constitutional rights.

Therefore, Defendant Spaide is not entitled to summary judgment as a matter of law in his favor on the remaining issues.    Defendant summary judgment should be denied.


A. <u>Plaintiff's evidence indicates that Defendant Spaide as Unit Manager, actions clearly shows malicious intent. Callous indifference thoughtless disregard for the consequences of his action and being deliberately indifference toward Plaintiff safety. when he conspired to have Plaintiff retuned back on his Unit after Plaintiff threaten him with bodily harm.</u>


Plaintiff Williams does not indicate anywhere in the complaint which of his federal rights he is claiming have been violated.   He does, however states in complaint

Upon arrival on Defendant Unit he constantly recd offical oppression from Defendant Spaide due to past behavior on other blocks other Jails.

Defendant approached Plaintiff's cell while housed in R-Hu threaten Plaintiff with bodily harm stating he'll be waiting and will deal with Plaintiff attitude upon his return. eventhough Dept of correction policy dictates otherwise. (seperation from staff)

Defendant's action of having Plaintiff Return to his Unit clearly shows malicious intent callous indifference thoughtless disregard for the consequences of his action and Plaintiff's safety and conspiring with other official to have Plaintiff retuned back to his Unit after Plaintiff threaten him. under Defendant care Custody and control. as an Result Plaintiff was assault by Defendant which Defendant filed criminal charges.
( Plaintiff Complaint page 2-A )

which he feels apply to this matter. as is clear from its wording § 1983 of the Civil Rights Act is applicable only to violations of Federal law.

Plaintiff's omission does not however, necessitate dismissal of the complaint, since the liberality allowed in modern pleading precludes a dismissal as long as what is pled would permit recovery under any theory of law.

when a pro se litigant is involved the pleading requirements are even less strict see,

e.g. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.ct 285, 292, 50 L.Ed 2d 251 (1976), reh'g denied, 429 U.S. 1066, 97 S.ct 798, 50 L.Ed.2d 285 (1977). this court should decide whether Plaintiff's complaint can give rise to a § 1983 cause of action.

the gravamen of a civil rights complaint, however, is a deprivation of federal constitutional or statutory rights.

Plaintiff's complaint as noted, does not specify which of these rights he claims were violated by the Defendants.

A generous reading of his allegations finds only two possible predicates for his suit.

One is a violation of the Eighth Amendments prohibition against cruel and unusual punishment.

the other arises from the due process clause of the Fourteenth Amendment to the United States Constitution.

the Fourteenth Amendment protects an individual's liberty interest in personal security.

Davidson v. O'Lone, 752 F.2d 817, 821 (3d Cir. 1984), aff'd sub nom. Davidson v. Cannon, 474 U.S. 344, 106 S.ct 668, 88 L.Ed.2d 677 (1986).

this liberty interest covers attacks committed by persons other than state custodians, id. at 822, and infringement of this interest by intentional conduct gives rise to a claim under § 1983 Id. at 828. this is because the essential element of a § 1983 action is abuse by a state official of his or her official position Id. at 827.

the due process clause was intended to secure the individual from the abuse of power by government officials.

Daniels v. Williams, — U.S. —, 106 S.ct 662, 665, 88 L.Ed.2d 662 (1986)

Although Plaintiff can find no case that allows redress under the Constitution for the emotional harm that Plaintiff asserts, his claim is not without arguable support.

The Supreme Court defined the inquiry for Eighth Amendment excessive force claims by convicted prisoners.

Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause the core judicial inquiry is that set out in Whitley v. Albers 475 U.S. 312, 106 S.ct 1078;

whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

Hudson v. McMillian 503 U.S.I, —, 112 S.ct 995, 999. 117 L.Ed 2d 156 (1992)

The 'malicious and sadistic' requirement applies regardless of whether the corrections officers are quelling a prison disturbance or merely trying to maintain order Id.

Moreover the standard applies regardless of whether the Plaintiff has alleged significant physical injury, for the ultimate constitutional inquiry is directed at whether an unnecessary and wanton infliction of pain' has occurred Id at —, 112 S.ct at 998-999 (quoting Whitley v Albers 475 U.S. at 319, 106 S.ct at 1084)

The extent of injury may be relevant in determining whether corrections officers unnecessarily and wantonly inflicted pain.

However, its absence does not end the inquiry, Id 503 U.S. at —, 112 S.ct at 999.

This court should also consider "the relationship between the need for application of force and the amount of force used,

the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response" Id. (quoting Whitley 475 U.S. at 321, 106 S.ct at 1085)

The Eighth Amendments prescription of cruel and unusual punishment prohibits the wanton and unnecessarily infliction of pain upon persons in custody See; Estelle v Gamble 429 U.S. 97, 97 S.ct 285, 50 L. Ed.2d 251 (1976)

(8)

! deliberate withholding of necessary medical treatment)
the test under the due process clause is whether the
conduct "shocks the conscience"
<u>Rochin v California</u>. 342 U.S. 165, 172, 72 S.ct 205, 96
L.Ed.183 (1952)

As we read these cases the critical element of each
constitutional violation is not the nature of the Plaintiffs injury
but the manner of the infliction of that injury.

the protection of fundamental liberties by the due
process clause and the eighth amendment extends to protection
from an official's abusive exercise of his power to inflict grossly
undue harm.

Thus, this court should not find Plaintiffs claim insuffici-
ent because it alleges emotional rather than physical harm.

Emotional distress can produce injury of the same
severe magnitude as occurred in the cases of physical harm
and withholding necessary medical care, and it can be inflicted
in the same wanton and unreasonable manner.

Although this court dismissed Plaintiffs other claims
against Defendant spaide as time-barred under two (2) yrs statute
nevertheless. "Evidence of a person's intent or disposition is
admissible to show that the person subsequently acted in
conformity with that intention or disposition. see;
<u>Mutual Life Insurance Co v Hillmon</u>. 145 U.S. 285, 12
S.ct 909. 36 L.Ed. 706 (1892)

As stated in Plaintiffs opposition to Defendant's statement
of Material facts. "Statement of the ~~Case~~ facts" page" 2.3.

As a Result of Recieving a verbal Reprimand from
Deputy Novothey from not hiring Plaintiffs as Laundry worker
as instructed. Defendant Spaide, as Unit Manager of d-block
at S.C.I. Mahanoy commence harassing Plaintiff for complaining
to his superiors. Thereafter, resulted in abuse by state official
in his official position.

On numerous occasion Plaintiff Reported to Defendant
his was having serious cell-mate problems and wanted cell
change before someone get hurt.

(9)

According to Dept of Correction files Plaintiffs' has an extensive history of assault on staff and inmate which Defendant as Unit Manager are aware of during this time Plaintiff brought matter to Defendant attention. to no avail. in essence Plaintiff was trying to avoid confrontation with cell while Defendant was trying to encourage it by not taking any action. although aware of the problem.

Which Defendant Spaide stated to State Police on Feb 22.99 after the assault.

He was having a problem with his celly and he wanted a cell change.

Defendant. I wouldn't let him change because I have certain rules I go by and he wasn't eligible at this time. (See Exhibit E pg# 3 State Police Report dated Dec 20.99)

By Defendant's own statement he was not concerned for Plaintiffs safety. or concerns.

Do to past animosity between Defendant and Plaintiffs and in order to avoid physical confrontation with Defendant Plaintiff informed hearing Examiner on November 24. 98. that he would like to plead guilty to both charges. in reference to misconduct # 869952 dated November 20.98. writting his own amount of money on commissary slip. (See Exhibit F    M.C. dated 11.20.98)

Plaintiff insisted that by pleading guilty he wanted to be placed in the R-H-U which Hearing Examiner D.J. Jones agreed after Plaintiff informed him of his situation with Defendant Spaide. Plaintiff received 15 day D.C. sanctica.

this fact is in relation with Defendant Spaide statement with the state Police. I quote.

"I was told he wasn't going to the R-H-U but he wanted to go to the R-H-U. usually if someone goes to the R-H-U they don't come back to the same cell. so I think that is what he thought would happen.

(See Exhibit E pg# 3 Defendant Spaide statement Feb 22.99)

(10)

the main reason why Plaintiff written his own money amount on his commissary slip was to receive a misconduct murder to be placed inside the R.H.U in order to change cell-mate which Defendant decline to do.

while serving this 15 days D.C. sanction which became effective November 24, 98.

( See Exhibit "F" pg# 2 M.C. sanction )

while Defendant Spaide that Manager approached Plaintiff cell as Plaintiff was housed in R.H.U. and commence threatening Plaintiff with statements such as:

"You think you're real smart by getting a M.C. and coming to the Hole (R-H.U) in order to change cell, especially after I told you I will not move you for any reasons' after you reported me to Deputy, every chance I get) I'm going to make it hard on you I know how to deal with your kind. I'm going to hold that cell just for you. I'm familar with your little assaults on street they did not know how to defend themselves I do, I'll be waiting for me and my next move.

thereafter on December 4, 98 while still housed in the R.H.U, as a Result of Defendant threatening visit Plaintiff wrote threatening request slip dated 12-4-98 to Defendant Spaide a/m which stated:

"I don't appreciate you lying on me, etc.

I'm not one of your regular Boys, etc.

"I don't play with staff nor do I allow staff to play with me, etc. since you started this I'll end it, now I want to see just how bad your ass claim to be enough with these and games I made buy move.

now its time for you to make your move allow me to help you Mr. Spaide since you're foolish enough to really believe you can handle me. since I've been on the block you've been trying me now try this.

I dare you to place me back in 1007 cell on I-B bed ASS!!" I'll be out meatkey on Tuesday night I'll see you first thing in the morning so we can 'discuss' this move, etc. now you can deal personally with my attitude

(11)

problem. etc.

After receiving this threatening request slip Defendant Spade issued Misconduct Report # A-123757 dated December 7, 98 threatening Another person class I / cat B # 3
(See Exhibit "D" pg 1.)

Plaintiffs recd 60 days DC sanction for threatening Defendant spade (See Exhibit "D" pg 4 Hearing Examiner sanction)

To Support Plaintiffs allegation Dec 4, 98 Plaintiff knew Defendant intent to place him back in same cell, and that Plaintiff would not be place on Administrative Custody (A.C. status) for threatening a Unit Manager with Bodily harm. Defendant had Plaintiff placed back in population on his unit in direct violation of Dept Department of Corrections Polices.

Administrative Custody Procedures DC-ADM 802
VI Procedures   A. Reasons for Transfer to A.C.
(A)-1 A The inmate is a danger to some person(s) in the institution who cannot be protected by alternate measures.


DC-ADM 802
IV Definitions  (K) Unit Manager
The individual who is responsible for the supervision of all members of the Unit Management Team and the delivery of security and program services.
(J) Unit Management Team -
The individuals assigned to operate a housing unit with the responsibilities for security, risk management, and program delivery.

Therefore, Defendant have such authority in this situation of having Plaintiff returned back to his Unit over looking security.

Section V Policy states:
It is the policy of the Department of Correction to provide a safe and secure environment for all staff and inmates.
Administrative Custody is to be used to further this purpose by separating those inmates whose presence in -

(12)

general population would constitute a threat to themselves, other or the safety and security of the institution.

The threatening request-slip dated Dec 4, 98 came after Defendant official oppression.

I dare you to place me back in 1007 cell. statement was the response of harassment by Defendant.

By Defendant Spaide own admission to state Police dated Feb 22, 99

I knew he was getting out of the R-H-U on Friday night and I had him put back in the same cell.

I figured we would deal with it when he was back on the unit.

(See Exhibit "E" pg# 2. State Police Investigative Report)

There's evidence that Defendant Spaide is disproport-ionately larger or stronger than Plaintiff

Defendant height Six-four (6'4) weight Two-fifteen (215) At the time.

Plaintiff's height Five-Seven (5'7) weight one-sixty-five (165).

This is one of main reasons why Plaintiff alleged in complaint Defendant Spaide conspired with other officials at S.C.I. Mahanoy to place Plaintiff back into an hostile environment with Defendant.

According to P.R.C. Report dated Jan 21, 99 which Sgt Dragovich signed.

D.C. time expires on Feb 5, 99. and there is no reason why he (Plaintiff) cannot return to his former housing unit.

(See Exhibit "D" pg# 6. P.R.C. Report dated Jan 21, 99)

As a result of Defendant Spaide actions of having Plaintiff returned back to his unit after Plaintiff threaten him and Defendant own statements: "I figured we would deal with it when he was back on the unit."

clearly shows malicious intent. callous indifference thoughtless disregard and recklessness for the consequences of his action and Plaintiff's safety.

(13)

Plaintiff was released from R-H-U Feb 5, 99 Friyday back to 2-13 block with Defendant Friyday night. On Monday February 8, 1999 around 0855 Hr in the morning while going to morning yard which is ran ~~between~~ 0800 Hrs as Plaintiff was going through the does Defendant Spaide was backing into 2-13 pod. as Plaintiff was passing Defendant he turned around, as Defendant was turning Plaintiff was Elbowed by Defendant which Plaintiff immediately ~~defendant~~ defended himself and punches was throwed. In the end Defendant was injuried as a result of his own action. thereafter Defendant filed criminal charges against Plaintiff for assaulting him. Plaintiff was found guilty and sentence to 6 to 12 years for assault on Defendant to be served consecutive with 25 to 50 years Plaintiff now serving.

It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eight Amendment As stated in:

<u>Deshaney vs Winnebago County Dept. of Social Services.</u> 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed. 2d 249 (1989);

"when the states takes a person into its custody and holds him there against his will the constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being"...

the rationale for this principle is simple enough: when the state by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and "reasonable safety" - it transgresses the substantive limits on state action set by the Eighth Amendment."

In this case, one of which is "Reasonable safety" <u>Deshaney, supra</u> 489 U.S. at 200, 109 S.Ct. at 1005

Defendant spaide motive of having Plaintiff returned on his unit in violation of D.O.C. policy. Results in outrageous conduct or abuse of official power clearly raises to level of a 1983 claim <u>Davidson</u> 752 F2d at 829.

(14)

<u>Defendant Spaide argument is whether evidence indicates that Defendant did not assault Plaintiff? and whether, even if Plaintiff's allegations are believed an "Elbow" to Plaintiff by Defendant does not Rise to level of a violation of Plaintiff's Eighth Amendment Right?</u>

Is not on point, a reading of Plaintiff's complaint indicates Defendant Spaide as Unit Manager action clearly shows Malicious intent, callous indifference and thoughtless disregard for the consequences of his action and;

Being deliberately indifference toward Plaintiff safety, when he conspired to have Plaintiff's returned back on his Unit after Plaintiff's threaten him with bodily harm. constitute Outrageous conduct or abuse of official power. is the focus.         Relying on;

<u>Smith vs Wade</u> 103 S.Ct 1625 (1983) 461 U.S. 30. 75 L.Ed.2d 632. (The Supreme Court. Justice Brennan held that guard could be held liable for punitive damages upon a finding of Reckless or careless disregard or indifference to inmate's Rights or Safety.)

In Wade supra note 8.
"Wanton means Reckless - without regard to the rights of others... Wantonly means causelessly. without restraint, and in Reckless disregard of the Rights of others.

Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable result of such failure." id. 461 U.S. 41. 103 S.Ct 1632.

Defendant Spaide maliciously and sadistically had Plaintiff returned back to his Unit for the purpose of causing harm and violating established D.O.C. policy on separation.

Defendant Did act with a sufficiently Culpable state of mind against Plaintiff.

Therefore. Defendant Spaide motion for Summary Judgment should be denied. for the above Reasons.

The Eighth Amendment implications of prisoner violence was addressed in; Farmer v. Brennan 511 U.S. 825, 114 S.ct 1970, 128 L.Ed.2d 251 (1994) Farmer vs Brennan 511 U.S. at 825 (1994)

The Supreme Court granted Certiorari to resolve the difference between the Federal CT of Appeals over the meaning of "deliberate indifference" in Eighth Amendment Litigations 511 U.S. at 829.

Justice Souter, writing for the CT, began his analysis by acknowledging that prison officials have a duty to protect prisoners from violence at the hands of other prisoners 511 U.S. at 833. Having Conduct and having "stripped them of virtually every means of self-protection and foreclosed their access to outside aid the government and its officials are not free to let the state of nature take its course and permit prisoners to prey upon one another 511 U.S. at 833. (In this case prison official.)

First newer condition in question must be objectively serious, this requires a prisoner to prove that he is incarcerated under conditions posing a substantial risk of serious harm 511 U.S. at 834 The second requirement the subjective component requires proof that prison officials were "deliberately indifferent" to this substantial risk of serious harm 511 U.S. at 834

Deliberate indifference, according to Farmer, should be defined in term of criminal law Recklessness 511 U.S. at 837.

that is to say, a prison official will not be considered reckless or deliberately indifferent unless he knows of and disregards an excessive risk to inmate health or safety 511 U.S. at 837. thus, prison officials must have knowledge of a substantial risk to inmate safety and disregard that risk to satisfy the deliberate indifference standard.

To establish a constitutional violation a prisoner "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate. it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. at 842.

Nor will prison officials who are aware of a substantial risk to inmate safety escape liability by arguing that they did not know beforehand that prisoner A would attack prisoner B. 511 U.S. at 843.

(16)

In conclusion, a prison official will be held liable under the Eighth Amendment for failure to protect "only" if he knows that inmates face a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it" 511 U.S. at 847.

Prisoner can prove these elements in "the usual ways, including inference from circumstantial evidence and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious" 511 U.S. at 842. (citation omitted)

Defendant Spaide Unit Manager had "adequate time to assess the serious threat between Plaintiff and himself when he rec'd threatening request slip of placing Plaintiff's back into 1007 cell. December 4. 98.    See Exhibit "D"

And disregarded that risk by failing to take reasonable measures to abate it.

The D.O.C. have an established policy to aviod such situation Administrative Custody Procedures DC-ADM 802

VI  Procedures

A. Reasons for Transfer to A.C.

Subsection (1-A) the inmate is a danger to some person (s) in the institution who cannot be protected by alternate measures. and/or

(1-d) Placement in general population would endanger the inmate's safety or welfare when it is not possible to protect him/her by other means:

This policy would apply simply because Plaintiffs alleged that Defendant Spaide Threaten him as well. during Defendant visit inside the R-H-U. in addition after Plaintiff's threaten Defendant by stating I dare you to place me back in 1007 cell. Defendant Spaide responded by his own admission to state police

I knew he was getting out of the R-H-U Friyday night and I had him put back in the same cell.

I figured we would deal with it when he was back on the Unit. See brief pg# 13.

As a result of Defendant statement upon being returned to his Unit Plaintiff's was Elbowed in self defense Plaintiff defended himself by hiting Defendant back thereafter Defendant

(17)

filed criminal charges which Plaintiff rec'd 6 to 12 yrs to be served consecutive with 25 to 50 yrs Plaintiffs now serving.

Plaintiffs claims that Defendant Spaide assaulted him and then placed criminal charges as a cover for his wrongful conduct. Under state law prior civilian and criminal complaints against the officer may be relevant on the issue of the complainants propensity for violence and with respect to question of who was the initial aggressor.

Com v Amos 445 Pa. 297 284 A.2d 748 (1971)
Com v Pettiford 253 Pa. Super 503, 385 A.2d 452 (1978) and
Com v Smith 502 Pa. 600, 467 A.2d 1120 (1983)

As Unit Manager of g-block, it was Defendant Spaide who approved and could of objected to Plaintiffs being returned back to his unit for the following Reasons.

According to D.O.C policy DC-ADM 802
IV Definitions
(R) Unit Manager
    The individual who is Responsible for the supervision of all member of the Unit Management Team and the delivery of security and program services.

(J) Unit Management Team
    The individuals assigned to operate a housing unit with the responsibilities for security, risk management, and program delivery. ~~Therefore~~

In essence no inmate are assigned to any block without approval or prior acknowledge of Unit Manager especially coming from R.H.Q.

DC-ADM 802 Administrative Procedures further states.
Section I Policy.
    It is the policy of the Dept of correction to provide a safe and secure environment for all staff and inmates. A.C. status is to be used to further this purpose by separating those inmates whose presence in general population would constitute a threat to themselves, other or the safety and security of the institution. As Unit Manager it Defendant responsibilities to follow these procedures and not establish his own Rules.

(18)

## B. Whether Plaintiff exhaust his administrative Remedies from February 8, 99 involving Defendant Spaide

Plaintiffs have exhausted his administrative remedies with respect to Defendant Spaide claims of February 8, 1999 incident.

## PLRA Exhaustion Requirement

No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative Remedies as are available are exhausted See 42 U.S.C. § 1997 e (A)

Prison Litigation Reform Act of 1995, on April 26, 1996 President Clinton signed into Law (PLRA)

It is now clear that any prison conditions Law suit filed by a prisoner who failed to first exhaust available administrative Remedies, must be dismissed pursuant to 42 U.S.C. § 1997 e (A) McCoy vs Gilbert 270. F.3d 503, 508 (7th Cir 2001)

The PLRA exhaustion requirement "is not a jurisdictional requirement such that failure to comply with the section would deprive Federal Courts of Subject matter jurisdiction". Nyhuis v Reno, 204 F.3d 65, 69 n.4 (3d Cir 2000)

However "the obligation to exhaust administrate Remedies before resort to Federal Court is a mandatory one. Curry vs Scott 249 F.3d 493, 501 n.2 (6th Cir 2001)

The purpose of an exhaustion Requirement is two fold: First, by requiring prisoner to comply with prison grievance procedures, it permits a state institution the opportunity to resolve the controversy internally before it becomes a Federal case Porter vs Nussle, 534 U.S. —, —, (Feb 26. 2002) Booth vs Churner 532 U.S. 731, 737 (2001) McCarthy vs Madigan 503 U.S. 140, 145 (1992)

According to Defendant Spaide he alleged Plaintiff never filed an Grievance (Complaint) against him is false.

In early March 1999, after February 8, 1999 incident Plaintiff filed Grievance at S.C.I. Mahanoy with Ms. Carol M. Detter, Corrections Superintendant Assistant of Mahanoy known as Grievance Coordinator. to initiate civil Complaint against Defendant Spaide and other Mahanoy staff official oppressed, being ~~indeffer~~ deliberate indifference towards my safety and Assaulted etc.

On March 5, 1999 Grievance Coordinator returned Grievance stating:

I am returning this grievance because the grievance system is not used for initiating civil complaints

You may contact your attorney, or obtain further advice from the library. However, the grievance system cannot be used to process such a complaint.

(See attached Exhibit "G": Returned Grievance dated **3-5-99**)

On March 14, 99 Plaintiff filed an appeal with Supt Dragovich at S.C.I. Mahanoy. Subject: Rejected Grievance Appeal. (See Exhibit "G" pg" 2-3. Appeal dated March 14, 99)

Todate Supt Dragovich never responded to Plaintiff's appeal. and time to respond have long passed.

On or about April 1, 99 I submitted a letter in the form of an appeal to the office of Secretary of Corrections to Western Region Deputy Secretary, once again explaining the situation

On April 14, 99 Assistant to Deputy Secretary Western Region Ms. Kathleen Zwierzyna Responded.

Your letter has been reviewed. this situation has been fully explained to you by both your counselor and Unit Manager.

You were brought back inside the institution until they can obtain an official version of your crime to determine what really happen etc.

(See Exhibit "G" pg" 4. Asst Deputy Secretary Response dated 4-14-99)

~~In Carr vs Kinney et. II FIITA (3 in Re)~~

The third circuit held that a decision by the Secretary

. of Correction office in response to a prisoners letter complaining of unlawful use of force constituted an exhaustion of administrative remedies ~~at this point~~.

Therefore under Federal law Plaintiff allegation create a factual issue barring dismissal on failure to exhaust administrative remedies.

Furthermore, although it's true as Defendant alleged the Department maintains a prisoner grievance system which permits a prisoner to seek review of problems that he or she experiences during the course of confinement. 37 Pa. Code § 93 9 (A). adopting DC-ADM 804. which sets forth the Consolidated Inmate Grievance Review system.

Nevertheless, the Department of Corrections have established additional procedures which inmates can file complaints outside of Grievance system DC-ADM 804.

## Criminal Violations. DC-ADM 004

DC-ADM-004. Policy "Criminal violations.
I. Authority
The Authority of the Secretary of Corrections to direct the operation of the Dept of Corrections is established by sections 201, 206, 506, and 901.13 of the Administrative Code of 1929. Act of April 9, 1929. P.L. 177. No. 175. as amended.
II. Purpose
It is the purpose of this policy to ensure that all alleged "criminal acts" committed by or to inmates are processed, investigated, referred to the appropriate law enforcement authority and disposed of, by prosecution and/or administrative action.
IV Definitions etc.
D. OPR - office of Professional Responsibility.

(See Exhibit "H" DC-ADM-004 criminal violations)

(21)
(22)

## Inmate Abuse Allegation Monitoring DC-ADM 001

Policy, Inmate Abuse Allegation Monitoring DC-ADM-001

### I. Authority

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Section 201, 206 and 506 and 901-B of the Administrative Code of 1929. 71 P.S. 3861, 66, 186 and 310-1, Act of April 9, 1929, P.L., 177, No. 175, as amended.

### II. Purpose.

The purpose of this document is to establish policy and procedures for the reporting and investigation of allegations of inmate abuse.

### III. Applicability.

This policy is applicable to all persons employed by, incarcerated in, or who have business with the Dept of Corrections.

### IV. Definitions

#### A. Abuse

1. Conduct that is prohibited either by law or by Dept policy. Such conduct involves:

   (a) The use of excessive force upon an inmate;

   (b) An occurrence of an unwarranted life threatening act against an inmate; and/or

   (c) An articulated verbal or written threat to inflict physical injury directed toward an inmate.

2. Excluded from this definition are:

   (d) abuse by another inmate.

(22)

## B. Abuse Allegation Monitoring

The procedures for collecting and reviewing information regarding complaints and grievance of abuse of inmates

L. Office of Professional Responsibility (OPR)

M. Secretary's Office of Inmate Grievances and Appeals.

The office responsible for the review and disposition of all appeals of inmate grievances to Central Office

## V. Policy

It is the policy of the Dept to ensure that inmates are not subjected to corporal or unusual punishment, humiliation "mental abuse", or punitive interference with the daily functions of institutional living and that any alleged abuse is thoroughly investigated [1]

## VI. Procedures

A. The Dept of Corrections has the legislatively delegated responsibility to exercise lawful authority in the administration of the state correctional system. The Dept of Corrections is committed to ensuring that the correctional system is administered and operated in a safe secure manner etc.

A. C. Reporting of Inmate Abuse Allegations all persons who are Employed by the Dept

Any employee receiving written or verbal notification from an inmate or a third party alleging an incident of abuse, or who is a witness to any abuse, is required to complete a DC-121 Part 3 Employee Report of Extraordinary Occurrence, for submittal to his/her supervisor and the facility's Grievance Coordinator. All reports shall be completed prior to completion of the employee's duty shift.

D. Reporting of Inmate Abuse Allegations by all persons committed to the custody of the Dept.

(1.) Any inmate who is the victim of an abuse may Report the abuse in the following manner:

A. filing an inmate grievance in accordance with Dept policy DC-ADM 804, "Inmate Grievance System".

[1] 3-4268, 1-ABC-3D-06, 3-ACRS-3D-05

(23)

b. Reporting it in writing, or verbally, to any staff member; or

(C) Reporting it in writing to the office of Professional Responsibility of the Dept of Corrections.

(2) Abuse allegations Received by other Central office employees shall be Referred to the office of Professional Responsibility.

E. Reporting of Inmate abuse allegations by all persons. etc. any person having knowledge concerning an alleged abuse may make Reports of allegations of inmate abuse. verbally or in writing to any staff member of the facility or of the central office of the Dept

X Superseded Policy and Cross Reference.
A Superseded Policy and Procedure
1. Dept Policy.
A. 1.2.4. Inmate Abuse Allegation Monitoring process issued October 2. 1992. by former Secretary Joseph N. Lehman.
b 1.2.4-1. Same as above, issued May 16, 1995. by Former Secretary Martin F. Horn.
c. 1.2.4.2. Same title as above, issued December 7. 1995. by Former Executive Deputy Secretary Raymond E. Clymer. Jr.

2. Facility Policy and Procedures.
This document Supersedes all facility Policy and procedures on this subject.
B. Cross References:
1. Administrative Manuals
A. DC ADM 804, Inmate Grievance System
b. 6.3.1. Facility Security.

(See Exhibit "I". Inmate abuse allegation Monitoring DC ADM001)

Therefore D.O.C have established additional procedures which Plaintiff filed complaint against Defendant spade to exhaust his administrative Remedies out side of Grievance System DC ADM-804.

(24)

In accordance with Prison Litigation Reform Act of 1995. 110 stat. 1321 (P.L. 104-134) ("PLRA"), which became law on April 26, 1996, stating an inmate is required to exhaust all administrative remedies prior to filing suit.

The relevant provision provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(A) See also. <u>Porter v. Nussle</u> 534 U.S 516 (2002) and <u>Booth v. Churner</u> 532 U.S. 731 (2001)

The Dept maintains an Inmate Abuse Allegation Monitoring System which permits a inmate to file an Complaint and seek Review of problems that he or she experiences during the course of confinement. Section 201, 206 and 506 and 901-B of the Administrative Code of 1929. 71 P.S. §§ 61, 66, 186 and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

The Dept has adopted DC-ADM 001. which sets forth procedures to file complaint and exhaust administrative remedies. (See brief page # 19 thru 21)

February, 1999 Plaintiffs filed letter of complaint against Defendant Spade and other officials at S.C.I. Mahanoy concerning Feb 8, 99 incident, with District Attorneys office of Schuylkill County.

On March 1, 99 Det. William J. Ailar, acknowledge receiving the complaint, which he forwarded to Clifford O. Hara, Director Special Investigations. (known as D.O.C. office of Professional Responsibility (OPR))

( See Exhibit "I" D.A office Response date (3-1-99)

In early March, 99 Plaintiffs filed letter of complaint against Defendant Spade and other officials at S.C.I. Mahanoy relating to Feb 8 99 incident and event of offered oppression with Pa state office in Harrisburg, Pa.

March 17, 99 Captain Jon D. Hurte Director General

Investigation Division Bureau of Criminal Investigat-ion. acknowledge letter of complaint. and stated;

etc, The Dept of Corrections has established a Bureau of Professional Responsibility who will review your concerns. I am forwarding a copy of your letter to the Director, Bureau of Professional Responsibility. for any action he deems appropriate. for the future, your complaints should he submitted to the Bureau of Professional Responsibility.
(See Exhibit " J " pg # 2 Pa. State Police (letter dated 3-17-99)

Both documents clearly shows Plaintiffs complaints was forwarded to OPR for review. Therefore exhausting Remedies.

Plaintiffs also took upon himself to file complaint directly with Central office early April, 99, in essence amending his complaint against Defendant Spade. in the form of an appeal. April 14,99 Central office responded.
(See Exhibit " G " pg # 4 letter from central office dated 4-14-99) and Plaintiffs brief page 17.

For unknown reasons when Plaintiff filed an Appeal on Rejecting his grievance March 5,99. and amending his complaint against Defendant Spade with central office who responded April 14,99 on the issue. Central office never forwarded the matter to OPR. according to policy which states;
Inmate Abuse etc! DC-ADM 001
II Procedures * subsection 17, 2
(2) Abuse allegations received by other Central office employees shall be Referred to the office of Professional Responsibility (OPR)
(Central office instead responded themselves??

<u>Plaintiff has no control over central office if and when they choose not to follow their own Rules and Regulation nor shall Plaintiff be penalize for their action</u>

(26)
(26)

Do to the fact Defendant Spaide constantly denying Plaintiffs filing complaints against him and that One investigation was conducted for Feb 8,99 assault incident.

Although Pa. State Police stated March 5,99 Complaint was forwarded to "OPR" for investigation.

Plaintiffs once again contacted Captain Jon O. Hurtz of State Police. July 13,04. Requesting the following.

1) Copies of Complaint. and

2) Informing Captain Hurtz. OPR office claims they never did Recd any copy of complaint from you concerning conditions at S.C.I Mahanoy against Spaide. and to forward any documentation of proof that documents was mailed.

July 21, 2004 Captain Hurtz, responded stating. Your letter to Pa. State Police and attachments concerning your condition at S.C.I. Mahanoy "was" referred to the Director. Bureau of Professional Responsibility. D.O.C.

He concluded personnel Complaints, general Correspondence is kept on file for only two years.
(Exhibit "J" page #3 Plaintiffs letter, and pg# 4 Pa. State Police Response)

On July 13, 2004. Plaintiffs also contacted Clifford O' Hara. Director Special Investigation "OPR" informing him. D.A. office and State Police stated they forwarded my Complaint to your office against Spaide at Mahanoy back in 1999 which Plaintiff informed him he has not Recd any Response from his office as of July 13, 2004. Plaintiffs inquired whether his office Recd complaint filed against Spaide at Mahanoy. if so, what was the outcome of this investigation. Plaintiffs concluded Mahanoy staff claims your office never made any investigation on the matter or have any knowledge of my complaint. Await your reply.

On July 20, 2004 Anthony W. Russ (Major) from "OPR" responded to Plaintiffs letter dated July 13, 2004.

Your complaint "was" previously investigated by S.C.I. Mahanoy staff. You need to contact S.C.I. Mahanoy for any further information.
(Exhibit "J" pg# 5 and #6 Plaintiffs letter and OPR Response)

(27)

On July 27, 2004 Plaintiffs once again wrote "OPR" this time addressed to Major Russ explaining the following;

1) Trying to avoid Court order for documents.

2) Mahanoy staff decline to forward copy of requested investigation documents. because criminal charges are pending against me and civil suit pending against Mahanoy staff.

3) Requesting that your office forward me a copy of the out come your office made on conclusion of S.C.I Mahanoy staff investigation concerning complaint filed against Spade and staff 1999 Assault. etc.    and

4) Your office never contacted me concerning my complaint. what was the out-come of this investigation. I need to know.

On August 3, 2004 Major Russ. responsed stating;

As you have been previously advised, the investigation was conducted by S.C.I Mahanoy staff. You will recd no further information from this office regarding this Matter.

( Exhibit "J" pg# 7 and 8. Plaintiff letter and OPR Reply to letter)

S.C.I Mahanoy nor S.C.I Greene have not responded to Plaintiffs Request concerning out come of their investigation.

According to D.O.C. own Rule and Regulation it's not the responsibility for S.C.I Mahanoy staff to investigate themselves. that; "OPR" responsibility for the following reasons;

~~Plaintiff brief p 20-21 therefore files I pu~~

Plaintiff brief pg# 20-21 clearly states OPR is responsible for such investigation.

For unknown reasons "OPR" and S.C.I Mahanoy staff decline to forward Plaintiff a copy of their investigation in violation of their own Rules and Regulations.

<u>Criminal Violation DC-ADM 004 date August 4.</u>

99.    <u>VI. Procedures    A. Criminal Complaints by inmates.</u>

Subsection 5. Inmate contact with District Attorney.

(A) If after investigation of an inmate complaint by the PSP or facility authorities. it is determined that a prosecution will not be instituted by either the PSP or the facility authorities.

the inmate-complainant shall be notified in accordance with established facility procedure of:

(1) the determination not to prosecute;
(2) the reasons for the determination; and
(3) of his/her right to communicate with the District Attorney to investigate the complaint further.

Therefore, Plaintiffs have submitted documentation to support his claim he exercise due diligent of exhausting his administrative remedies and if this court conclude otherwise Plaintiffs argument would be "to the extent if his claims were not fully prosecuted through the various levels of the complaint procedure, his effort to so exhaust his administrative remedies were frustrated by prison officials; not following their own procedures and policy which Plaintiffs has no control over.

Plaintiffs alleged that Defendant spaide conspired with other official to violate Plaintiffs personal security rights on the grounds.   <u>Civil Conspiracy</u>

which Defendant spaide, deliberately and maliciously entered into a civil conspiracy to deny Plaintiffs of his state and federal protected constitutional rights when Plaintiffs was returned to Defendant Clout February 5, 99 and Assaulted

1. A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between parties to inflict wrong or injury upon another and an overt act that results in damage.

2. A Plaintiffs seeking redress in a civil conspiracy case need not prove that each participant in a civil conspiracy knew exact limits of its illegal plan or identity of all participants herein.   3. To demonstrate existence of a conspiratorial agreement in a civil conspiracy case, it simply must be shown that there was a single plan, the essential nature and the scope of which was known to each person who is to be held responsible for its consequences.

4. Participants in a civil conspiracy must share general conspiratorial objective, but they need not know all the details of

(29)

plan designed to achieve objective or posses same motives for desiring intended conspiratorial result.

5. Liability for civil conspiracy requires proof of more than an agreement among conspirators. Plaintiff must show an actual deprivation of Rights resulted from conspiracy

Which Plaintiffs have already established although at this time other Defendants claims was dismissed under statue of limition subject to Appeal at conclusion of this case. Defendant Spaide could still be held liable under civil conspiracy at this time.

In applying these principles to the present case. Plaintiffs allegations must be taken as true for the purpose of determining whether he stated a claim cognizable under § 1983

A pro se complaint must be liberally construed and can be dismissed only if it appears to a certainty that the complainant can prove no set of facts which would entitle him to Relief.

Estelle vs Gamble 429 U.S. 97, 106, 97 S.Ct. 285, 292. 50 L.Ed. 2d 251 (1976).

## Conclusion

The State, Defendant Spaide made no attempt to have Plaintiffs placed on another Unit which Defendant forced Plaintiffs to defend for himself, and therefore assumed some Responsibility for failing to seperate. For all the Reasons discussed above, the uncontroverted facts demonstrate and considering the evidence in the light most favorable to Plaintiffs, this ct should conclude that a genuine issue of material fact exist as to:

Whether Defendant Spaide acted with a sufficiently culpable state of mind, deliberate indifference and Recklessly; and

Whether the alleged wrongdoing was "sufficiently serious" to establish a constitutional violation

Hudson vs McMillian 503 U.S. 1. 7, 112 S.ct 995, 117 L.Ed. 2d 156 (1992)

together with pleadings depositions, affidavits and admissions on files.

For one or all of the foregoing Reasons, Defendant Spaide motion for Summary Judgment should be denied as a matter of law.

(30)

In deciding a motion for summary judgment the Court must determine whether there exist any triable issue of fact <u>Anderson vs Liberty Hobby</u>, 477 U.S. 242, 247-49, 106 S.ct 2505, 91 L.Ed. 2d 202 (1986)

the non-moving party must "go beyond the pleadings and designate specific facts showing that there is genuine issue for trial" <u>Celotex Corp vs Catrett</u> 477 U.S. 317, 324, 106 S.ct 2548, 91 L.Ed, 2d 265 (1986)

(quoting Fed. R. Civ. P. 56(c).)

thus Plaintiff has an obligation to present affirmative evidence to support his claims. See <u>Anderson</u> 477 U.S. at 257.

this is not a situation where Defendant Spaide simply Elbowed Plaintiffs. Resulting in de minimis. and Plaintiff filed an 1983.

Evidence established Defendant culpable state of mind, when he Elbowed Plaintiffs and then filed criminal charges against Plaintiffs stating his was assaulted which Plaintiffs rec'd 6 to 12 yrs sentence. which Defendant provoke Plaintiffs to defendant for himself. Plaintiffs 5'7" Defendant 6'4" this situation rose beyond de minimis. physical violence and constituted a violation of Plaintiffs Rights to personal safety.

Respectfully submitted.
James Williams pro-se

James H. Williams AY-8692
175 Progress Dr.
Waynesburg, Pa. 15370

Date December 13.04

(31)

C. *Plaintiff's new Request to Amend Complaint and Request an award of Nominal Damages at this Stage*

Although Plaintiff does not expressly seek nominal damages in his complaint. the third circuit has held that "it is not necessary to allege nominal damages"
*Basista v Weir*, 340 F.2d 74, 87 (3d Cir. 1965)

Moreover, the allegation in Plaintiff's complaint are consistent with a claim for nominal damages, and now he has asserted that he seeks nominal damages in brief. on the grounds:
the Supreme Ct Recognized in both
*Carey v Piphus*, 435 U.S. 247, ~~247~~ 98 S.Ct 1042, 55 L.Ed. 2d 252 (1978)
*Memphis Community Sch. Dist. v Stachura* 477 U.S. 299, 106 S.Ct 2537, 91 L.Ed. 2d 249 (1986)
that certain absolute constitutional Rights may be vindicated by an award of nominal damages in the absence of any showing of injury warranting compensatory damages.
*Stachura, supra*, 477 U.S. at 308 n. 11, 106 S.Ct 2537.
("Nominal damages, and not damages based on some undefinable 'value' of infringed Rights, are the appropriate means of 'vindicating' Rights whose deprivation has not caused actual, provable injury")
*Carey supra*; 435 U.S. at 266, 98 S.Ct 1042
(approving Recovery of nominal damages without proof of actual injury")

Even if this court conclude 1983 does not cover emotional or mental distress. still Plaintiff's have established Defendant hpride conduct was motivated by evil motive or intent and/or involved Reckless or carious indifference to the Federally protected Rights of others. Punitive damages may be awarded under 42 U.S.C. § 1983. and violation of 14th Amendment which protects an individual's liberty interest in personal security. and infringement of this interest by intentional conduct gives Raise to claim under 1983. essential element of 1983 action is abuse by a state official of his official position. See Brief page # 6 ~ 7.

(32)

In The United States District Court
For The Middle District of Pennsylvania

James H. Williams
          (Plaintiff)

                                         Civil No# 1:CV-01-0280

          VS

Richard L. Spaide                        Judge Kane
          (Defendant)


Certificate of Service


&, James H. Williams, pro se, hereby certify
that on December 13, 04, I served a true and correct
Copy of _Plaintiff's_ ~~Reply in opposition to the~~
                    _Brief In opposition to Defendants_
Motion for Summary Judgment by causing it to be
deposited in the United States mail first class postage
prepaid to the following.

office of the clerk              not Served
U.S. District Court House        Linda S. Lloyd
228 Walnut St. P.O. Box 983      Deputy Attorney General
Harrisburg, Pa. 17108
Certified Mail #
7003-2260-0002-6445-6193         Respectfully Submitted
                                 James Williams

                                 James Williams AY-8692
Date December 13, 2004           175 Progress DR
                                 Waynesburg, Pa. 15370