IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES H. WILLIAMS,** : | |
|       **Plaintiff,** : | **CIVIL NO. 1:CV-01-0280** |
| : | |
| v. : | **(Judge Kane)** |
| : | |
| **RICHARD L. SPAIDE,** : | |
|       **Defendant.** : | |

## MEMORANDUM and ORDER

**I.**     **Background**

James H. Williams, an inmate at the Greene State Correctional Institution in Waynesburg, Pennsylvania, commenced this pro se civil rights action with a complaint pursuant to 42 U.S.C. § 1983. The only remaining[1] Defendant is Richard Spaide, Unit Manager at the State Correctional Institution at Mahanoy, Pennsylvania, ("SCI-Mahanoy"). Williams claims that while previously incarcerated at SCI-Mahanoy (1) Spaide's actions resulted in Williams' exposure to environmental tobacco smoke ("ETS") and (2) Williams was assaulted by Defendant Spaide on February 8, 1999.

Presently pending is Spaide's motion for summary judgment (Doc. 51) filed on July 22, 2004. A statement of facts (Doc. 52) and a brief in support (Doc. 53) of the motion were timely filed. By Order dated September 30, 2004 (Doc. 56), this Court directed supplemental service of Spaide's motion and supporting documents upon Williams, and Williams was directed to file a brief in opposition to the motion, a response to the statement of facts, and pertinent evidentiary materials ("designated documents") within fifteen (15) days of the date of the Order. Williams was forewarned that upon failure to file the designated documents, the Court would deem the motion for summary judgment as unopposed. After multiple enlargements of time, Williams ultimately filed a response (Doc. 61) to Defendants statement of material facts, a brief in opposition (Doc. 62) to summary judgment, and exhibits (Doc. 63) in opposition

---

[1] This Court previously dismissed the claims against SCI-Mahanoy Superintendent Martin L. Dragovich and SCI-Mahanoy Unit Manager James McGrady. See Doc. 25.

to summary judgment. Accordingly, the motion is now ripe for decision. For the reasons that follow, Spaide's motion for summary judgment will be granted.

**II.        Discussion**

**A.        Summary Judgment Standard**

Spaide's motion for summary judgment (Doc. 51) alleges that (1) Williams failed to set forth sufficient facts to sustain his assault claim, and (2) Williams failed to exhaust his administrative remedies on that claim prior to filing the complaint. Under Federal Rule of Civil Procedure 56(c), summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment has the burden of proving that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Additionally, on summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Mraz v. County of Lehigh, 862 F. Supp. 1344 (E.D. Pa. 1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To preclude summary judgment, there must be a "genuine" issue of a material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (citations omitted).

Moreover, Rule 56 provides that the adverse party may not simply sit back and rest on the allegations contained in the pleadings. Rather, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). When addressing a summary judgment motion, our inquiry focuses on "whether the

2

evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52 (emphasis added).

### B. Exhaustion Requirement

Spaide's summary judgment motion is based, in part, upon a contention that Plaintiff has failed to exhaust his administrative remedies on his claim of the February 8, 1999 assault by Spaide. The Prison Litigation Reform Act (the "Act"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996) requires prisoners to exhaust administrative remedies prior to filing claims in federal court. Under the provisions of 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"This provision makes no distinction between an action for damages, injunctive relief, or both. The exhaustion requirement is mandatory, whether or not the administrative remedies afford the inmate-plaintiff the relief sought in the federal court action." Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). The exhaustion requirement of § 1997e(a) applies to all actions brought with respect to prison conditions, whether under § 1983 or any other federal law. Porter v. Nussle, 534 U.S. 516, 532 (2002)(concluding that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").

Nevertheless, "[f]ailure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)). A prisoner has no duty to plead exhaustion in the complaint, and it is the Defendants' issue to support with credible evidence. Ray, 285 F.3d at 297.

3

The Pennsylvania Department of Corrections has established a Consolidated Inmate Grievance Review System, policy number DC-ADM 804-4, which became effective May 1, 1998. (Doc. 52, Ex. 4). DC-ADM 804-4, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the facility grievance coordinator. (DC-ADM 804 § VI(A)(1)(f)). The written grievance must be submitted for initial review within fifteen (15) days after the events upon which the claims are based. (DC-ADM 804 § V(B)(2)). If the facility grievance coordinator determines that the "issue being grieved is not in accordance with DC-ADM 804, it shall be returned to the inmate unprocessed . . . enumerating the reason(s) the grievance was not accepted." (Id. § VI(B)(1)(f)). If resubmitted, the grievance must be resubmitted within five working days under the same grievance number. (Id.). If the facility grievance coordinator determines that the grieved issue is in accordance with DC-ADM 804, "the facility grievance coordinator [shall] designate a staff member to serve as the Grievance Officer for that issue." (Id., § VI(B)(1)(e)). "If the Grievance Officer submits the grievance for formal resolution, he/she shall provide a written response to the inmate within ten working days of receipt of the grievance." (Id., § VI(B)(1)(i)).

An inmate may appeal the initial review decision, in writing, to the facility manager within five working days of receipt of the decision. (Id., § VI(C)(1)(b)). The facility manager shall notify the inmate of his/her decision within fifteen working days of receiving the appeal. (Id., § VI(C)(2)(c)). An appeal from the facility manager's decision may be made in writing to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within five working days of receiving the decision. (Id., § VI(D)(1)(b)).

A review of the record confirms that Plaintiff has not exhausted administrative remedies on the issue of the alleged assault. Spaide has filed a sworn declaration (Doc. 52, Ex. A) in support of his motion for summary judgment. In his declaration, he avers that "Williams did not file any grievance raising the issue of Defendant Spaide's alleged 'assault' of Plaintiff on February 8, 1999." (Id. at ¶ 23). As previously noted, in response to a motion for summary judgment the adverse party may not simply sit back and rest on

4

the allegations contained in the pleadings. Rather, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Although Plaintiff alleges in the complaint, his counter-statement of material facts (Doc. 61 at ¶ 20), and his brief in opposition (Doc. 62 at 19-21) to summary judgment that he has exhausted administrative remedies, he has filed nothing to substantiate this bare assertion in the face of Defendants' challenge, thus failing to satisfy his Rule 56(e) obligation.

Plaintiff submits Exhibit G (Doc. 63, Ex. G) to support his contention that he exhausted his administrative remedies on the alleged assault by Spaide on February 8, 1999. However, Williams does not attach a copy of the grievance that was rejected (as he did with the grievance documented in Doc. 63, Ex. A), to enable the Court to verify that it related to the alleged February 8, 1999 assault by Spaide. Further, there is no documentation in the record to substantiate that the grievance was filed through the entire administrative process, including SOIGA. Although Exhibit G includes a letter dated April 14, 1999 from the DOC, the letter does not reference a grievance, and appears to relate to criminal charges filed against Williams. After a review of the record, the Court concludes that the complete administrative procedure was made available to the Plaintiff, and he did not fully avail himself of that process. The procedure contemplates several tiers of review, and the grievance system is not exhausted when an inmate fails to take timely action through established channels to a conclusion. Plaintiff's failure to refute Respondents showing that he failed to comply with established procedures warrants summary judgment on the alleged assault issue.

### C. ETS Exposure

Plaintiff also alleges that Spaide assigned him to a cell with an inmate who smokes cigarettes, and as a result he was exposed to environmental tobacco smoke ("ETS"). He claims that "placing a non-smoker with a smoker placed [his] health in harm (sic) way for over 21 days or more." (Doc. 1 at 2.) This Court has previously held that the ETS claim is barred by the applicable statute of

limitations (See Doc. 25 at 7). However, Spaide does not address the ETS issue in his motion for summary judgment. Nevertheless, Plaintiff is proceeding in forma pauperis in this case (See Doc. 9), and pursuant to the Prison Litigation Reform Act the Court may, at any time, ". . . dismiss the case . . . if the court determines that . . . (B) the action or appeal --- (i) is frivolous . . . ." See 28 U.S.C. § 1915(e)(2)(B)(i). This section applies equally to cases that are factually frivolous and those that are legally frivolous. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). An action is legally frivolous if it is based upon an indisputably meritless legal theory, and may be dismissed under § 1915(e)(2)(B)(i). Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989). Indisputably meritless legal theories are those "in which it is . . . readily apparent that the plaintiff's complaint lacks an arguable basis in law . . . ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)). "[T]he frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

The Constitutional issue central to the ETS claim is the Eighth Amendment proscription of cruel and unusual punishment. The Eighth Amendment prohibits excessive bail, excessive fines, and cruel and unusual punishment. This provision imposes a duty upon jail officials to provide prisoners with humane conditions of confinement. Farmer v. Brennan, 511 U.S. at 832. This duty includes a requirement to ensure that prisoners receive sufficient food, shelter, clothing, protection and medical care. Farmer, 511 U.S. at 832. However, in the context of prison confinement, "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). Part of the penalty associated with violating the laws of society is routine discomfort. Id., at 9. "[A]lthough accidental or inadvertent failure to provide adequate . . . care to a prisoner would not violate the Eighth Amendment, 'deliberate indifference . . . to . . . needs of prisoners' violates the Amendment because it constitutes the

unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993), quoting Estelle v. Gamble, 429 U.S. 97 (1976).

Prison officials violate an inmate's right to be free from cruel and unusual punishment when, through intentional conduct or deliberate indifference, they subject the inmate to injury at the hands of another prisoner. Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1992); Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).

Contrary to his inference, Williams does not have a right to be free from any exposure to ETS. The United States Supreme Court has established a two-prong test to determine whether second-hand smoke exposure violates a prisoner's Eighth Amendment rights. Helling, 509 U.S. at 32. To prevail, the Plaintiff must establish (1) objectively that he is being exposed to unreasonably high levels of ETS, and he must establish (2) subjectively that prison authorities demonstrated a deliberate indifference to his situation. (Id. at 35). "In assessing the first factor, the court must conduct an inquiry into the seriousness of the potential harm and into the likelihood that second-hand smoke will actually cause such harm." (Id. at 37). The court also has to determine "whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Id. (emphasis in original).

Exposure to ETS is not an objectively serious injury per se. Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) ("Although Helling held that exposure to ETS might satisfy the objective prong of the deliberate indifference test under some circumstances, Helling did not hold that exposure to ETS qualifies as an objectively serious injury per se. Henderson still must show that his present injury from ETS exposure was objectively serious. Henderson was unable to establish any reasonable basis for finding a significant medical condition or ailment at all resulting from his exposure to ETS.") (internal citations omitted). While the consequences of exposure to high levels of ETS for prolonged periods may be

substantial, this Court sees no arguable basis here to conclude that a twenty-one (21) day exposure would qualify as the degree of exposure necessary for any such consequences to occur.

Williams has also failed to establish deliberate indifference by Spaide. Since he concedes that his cell was in a non-smoking area, the necessary implication would be that prison officials were cognizant and sensitive to prisoner health concerns. Where prison officials have prohibited prisoner smoking, the Court is confident that no reasonable jury could conclude that mere placement of a non-smoker with a smoker constitutes deliberate indifference to prisoner health. Moreover, Plaintiff offers no evidence to suggest he suffers from asthma or other respiratory illness, or any other malady which is the result of, or even exacerbated by exposure to ETS. Williams has not set forth any individual sensitivity which would make the occasional exposure to smoke-polluted air rise to the level of cruel and unusual punishment. Absent a serious medical concern, limited exposure to second-hand smoke is a risk our society chooses to tolerate. Williams has not set forth any type of objective serious injuries or medical needs that amount to a denial of "the minimal civilized measure of life's necessities," Farmer 511 U.S. at 834. Since plaintiff's complaint is "based on an indisputably meritless legal theory" it will be dismissed, without prejudice, as legally frivolous. Wilson, 878 F.2d at 774. Under the circumstances, this Court is confident that maintenance of the case on the ETS issue is not only unwarranted, but would waste the increasingly scarce judicial resources that § 1915 is designed to preserve. See Roman, 904 F.2d at 195 n.3.

**III.        Conclusion**

Since Plaintiff failed to exhaust administrative remedies on the alleged assault by Spaide on February 8, 1999, summary judgment will be granted on this issue. Moreover, since Plaintiff has not set forth facts sufficient to establish Spaide's deliberate indifference to Wiliiams' serious medical needs, the ETS claim will be dismissed as indisputably meritless under 28 U.S.C. § 1915(e)(2)(B)(i). An appropriate order follows.

**IV.** **<u>Order</u>**

**AND NOW**, in accordance with the foregoing, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment (Doc. 51) is **GRANTED** on Plaintiff's claim of assault by Richard L. Spaide.
2. Plaintiff's claim of deliberate indifference to his serious medical needs is dismissed under 28 U.S.C. § 1915(e)(2)(B)(i).
3. The Clerk of Court is directed to close this case.
4. Any appeal from this Order will be deemed frivolous, not taken in good faith and without probable cause.

                                                     S/ Yvette Kane
                                                     YVETTE KANE
                                                     United States District Judge

Dated: February 28, 2005.